283 S.W.3d 495 (2009)
In the Interest of J.A.J.
No. 09-07-00497-CV.
Court of Appeals of Texas, Beaumont.
Submitted December 11, 2008.
Decided April 2, 2009.
*496 Langston Scott Adams, Port Arthur, for appellant.
Gregg Abbott, Atty. Gen., John B. Worley, Rande K. Herrell, Michael D. Becker, Asst. Attys. Gen., Austin, for appellees.
Before McKEITHEN, C.J., KREGER and HORTON, JJ.

OPINION
HOLLIS HORTON, Justice.
This is an appeal from an order retroactively increasing a father's court-ordered child support obligation. The child's father, A.J.,[1] appeals from the trial court's order that found him in arrears and obligated him to pay $23,200.00 in retroactive child support. A.J. argues, in part, that the trial court abused its discretion by using only his immediate past wage information to calculate the entire amount due for the child's past support. Because we agree the trial court failed to follow the statutory guidelines in calculating A.J.'s arrearage, we reverse and remand for further proceedings.

Factual Background
A.J. and B.S. are the parents of J.A.J., born May 20, 1996. In 2001, the trial court found that A.J. was J.A.J.'s biological father and ordered him to pay $475.00 in monthly child support beginning March 1, 2001. A.J.'s earnings in 2001 were approximately $31,000.00. The 2001 order also made A.J. and B.S. joint managing conservators and granted B.S. the right to determine where the child lived.
On September 2, 2004, the Attorney General filed a suit seeking to increase A.J's child support obligation above the amount established by the 2001 child support order. B.S. subsequently joined in the Attorney General's request. On September 16, 2004, A.J. filed a motion requesting that he be given the right to designate the child's primary residence.
In May 2007, following a jury trial on A.J.'s request to modify the prior order to give him the right to designate the child's primary residence, the trial court orally modified its prior order. Later, consistent with its earlier oral pronouncement, the trial court entered a judgment that gave A.J. the exclusive right to designate the child's primary residence. The trial court also ordered that B.S. pay child support in the amount of $252.00 per month, effective June 2007.
*497 On May 30, 2007, the trial court conducted an evidentiary hearing on B.S.'s and the Attorney General's motions seeking to retroactively increase A.J.'s prior $475.00 monthly child support obligation. Lori Hardy, a State employee whose job includes calculating the amount of a person's child support obligation, testified at the modification hearing. Hardy testified that in the eighteen months prior to the hearing, A.J.'s average monthly gross wage equaled $11,000.80. Hardy explained that because A.J.'s monthly net income exceeded $6,000.00, A.J.'s child support payment would be $1,200.00 per month.[2] Hardy offered no opinion concerning the lump sum for back child support that might be due and admitted that she only had A.J.'s wage information for the past eighteen months.
No one testified during the hearing that A.J. had failed to comply with his $475.00 monthly support obligation pursuant to the court's 2001 order. No other witnesses gave sworn testimony at the hearing concerning A.J.'s prior wages.
On July 13, 2007, the trial court signed an order finding that as of May 24, 2007, A.J. was in arrears in the total sum of $23,200.00. Later, on August 22, 2007, the trial court made findings of fact that show the methodology it used in determining the amount of A.J.'s arrearage. The trial court found that A.J.'s "new child support amount" was $1,200.00 per month. The trial court also found that the difference between the amount that A.J. should have paid, and his former support obligation was $725.00 per month ($1,200.00-$475.00). Beginning with the month after the suit to modify had been filed, the trial court then multiplied the monthly deficiency by the thirty-two-month period, October 2004 through May 2007, to arrive at its finding that A.J. owed back child support of $23,200.00 ($725.00 x 32 months). The trial court's arrearage order required A.J. to make payments of $252.00 per month beginning June 2007 until the arrearage order was paid in full.

Discussion
A trial court's decision to modify a child support order is reviewed on appeal under an abuse of discretion standard. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); Royer v. Royer, 98 S.W.3d 284, 285 (Tex.App.-Beaumont 2003, no pet.). The trial court's support order will not be reversed unless the complaining party shows that the order constituted a clear abuse of discretion. Worford, 801 S.W.2d at 109. "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." Id. In determining whether a trial court abused its discretion, we view the evidence in the light most favorable to the trial court's *498 decision and indulge every legal presumption in favor of the judgment. Royer, 98 S.W.3d at 285. As long as there is some evidence of a substantive and probative character to support the trial court's decision, an appellate court will affirm the order. Id.
A.J. appeals from the trial court's order finding him $23,200.00 in arrears. In one issue, A.J. contends that "[t]he trial court abused its discretion in awarding [B.S.] retroactive child support in an amount equal to the maximum amount then currently due for the entire period the case was pending." Although the trial court had evidence relevant to A.J.'s wages for an eighteen-month portion of the period covered by the retroactive support order, A.J. argues that the trial court did not have his income or wage information for the period between September 2004, the date that the request to increase his child support was filed, through November 2005. According to A.J., the trial court abused its discretion in assuming that his income from September 2004 through November 2005 equaled the monthly income he had earned during the eighteen-month period immediately before the hearing. A.J. asserts that "in a child support context this means a court may not simply make assumptions regarding an obligor's income that are unsupported by the evidence, and then enter a child support order based on those assumptions...."
Arguing that sufficient evidence supports the trial court's ruling, the Attorney General relies upon the testimony about A.J.'s 2002, 2003,[3] 2006, and 2007 wage information. The Attorney General's brief also points to testimony establishing that A.J. had worked at the same company since 2002. Based on the evidence of A.J.'s yearly earnings of $71,000.00 in 2002 and 2003, together with the fact that A.J. had worked at the same company during the entire period covered by the retroactive order, the Attorney General argues that "it can be presumed that he made at least that much in 2004 and 2005, especially since he was working at the same job."
As this case involves a modification of a prior support order, the Legislature has authorized modification if:
(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:
(A) the date of the order's rendition; or
(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or

*499 (2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.
TEX. FAM.CODE ANN. § 156.401(a) (Vernon 2008).[4] The Family Code also provides instructions to guide the court in calculating the retroactive support obligation: "In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period...." Id. § 154.131(b) (Vernon 2008).[5]
The motion to modify included the period between October 2004 and May 2007. To calculate the amount of A.J.'s support obligation under the guidelines and section 154.131 of the Family Code, the trial court needed evidence of his wages during the relevant time period in order to calculate his net resources. After making that calculation, the court could then compare it with the amount it previously ordered A.J. to pay in child support. With respect to A.J.'s wages in 2004 and 2005, the record contains no direct evidence tending to demonstrate A.J.'s annual earnings during those years. Additionally, the period during which the trial court had no direct evidence on A.J.'s wages constituted a significant portion of the total relevant time period at issue.
While the child support statute creates guidelines regarding the amount of child support to be awarded, a trial court's compliance with the guidelines is not mandatory. TEX. FAM.CODE ANN. § 154.121; see In re Sanders, 159 S.W.3d 797, 801 (Tex.App.-Amarillo 2005, no pet.). Further, net resources may be calculated on "imprecise information." See In re J.C.K., 143 S.W.3d 131, 139 (Tex.App.-Waco 2004, no pet.). Nevertheless, with respect to retroactive support orders, section 154.131 of the Family Code states that a trial court must "consider" the obligor's "net resources" during the relevant time period. TEX. FAM.CODE ANN. § 154.131(b); see Flores v. Cuevas, No. 01-06-00257-CV, *500 2007 WL 624716, at *4 (Tex.App.-Houston [1st Dist.] Mar. 1, 2007, no pet.) (mem.op.). In this case, without testimony to establish A.J.'s earnings between October 2004 and November 2005, we conclude that the trial court could not have considered or calculated A.J.'s net resources during such periods.
The Family Code states that the trial court "shall" require a party to produce evidence about his earnings to calculate the party's net resources. TEX. FAM.CODE ANN. § 154.063 (Vernon 2008) (providing that courts can require a party to "(1) furnish information sufficient to accurately identify that party's net resources and ability to pay child support; and (2) produce copies of income tax returns for the past two years, a financial statement, and current pay stubs"). Moreover, when the necessary wage and salary data is absent, "the court shall presume that the party has wages or salary equal to the federal minimum wage for a 40-hour week." TEX. FAM.CODE ANN. § 154.068 (Vernon 2008). The record does not reflect that the trial court required A.J. to provide it with wage information during 2004 or 2005, or that A.J. refused any request to provide the trial court with his wage information. Here, we are not faced with deciding what a trial court should do when a party refuses to produce required information.
While the record does not reflect any direct testimony concerning A.J.'s wages or salary to compute an annual monthly income for the years 2004 or 2005, the record does contain testimony relevant to A.J.'s wages in 2002 and 2003. The Attorney General argues that we should presume from A.J.'s testimony that because he earned approximately $71,000.00 in 2002 and 2003, he received similar income in 2004 and 2005. To further support its argument, the Attorney General relies on A.J.'s testimony that he had been employed by the same company during all years relevant to the request for retroactive child support. However, based on this rather sparse record, applying a presumption that A.J. earned $71,000 per year would not support the trial court's calculation of A.J.'s retroactive support obligation. Considering a presumed annual wage of $71,000.00, A.J.'s monthly presumptive child support obligation would be approximately $900.00[6] for 2004 and 2005; the support calculation does not yield $1,200.00, which is the monthly amount found by trial court to constitute A.J.'s monthly child support obligation.
Additionally, the testimony in the record about A.J.'s earnings is inconsistent with the argument that the trial court could assume that A.J. earned $71,000 annually during 2004 and 2005. A.J. testified that overtime opportunities significantly impacted *501 his past wages. According to A.J., his salary during 2007 was in the "mid $60,000 range." A.J. testified, "I will go ahead and state for the record that overtime there varies from year to year, all right, which is added to my base salary." We have no testimony in the record concerning the amount of A.J.'s base salary in any year prior to 2007, and based on the testimony in the record, it is apparent that A.J.'s income depended, in significant part, on his overtime in any given year.
In light of A.J.'s testimony about his wages in 2007, and absent evidence of A.J.'s base wage or overtime income in 2004 and 2005, it is not possible to infer that A.J. earned a sufficient monthly wage to yield a monthly child support obligation of $1,200.00. Having reviewed the testimony, we conclude that the trial court's inference that A.J.'s child support obligation during 2004 and 2005 equaled $1,200.00 was arbitrary.
In reversing modification orders, other appellate courts have relied on the absence of evidence relevant to a party's earnings. Specifically, the Fourteenth Court of Appeals stated the requirement for evidence as follows: "The record must contain both historical and current evidence of the relevant person's financial circumstances." London v. London, 192 S.W.3d 6, 15 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). In similar circumstances, the First Court of Appeals held that absent evidence on wages during the relevant time period, the trial court could not presume wages in excess of the federal minimum wage presumption when determining retroactive child support. Flores, 2007 WL 624716, at *4 (In determining the amount of retroactive support, and in the absence of relevant evidence of earnings, "the trial court should have presumed that Flores had wages or salary during the relevant time period equal to the federal minimum wage for a 40-hour week.").
While a trial court's support order can vary from the guidelines, as a trial court may determine that the application of the guidelines would be unjust or inappropriate, in this case the trial court made no finding that the guidelines were unjust or inappropriate. TEX. FAM.CODE ANN. §§ 154.121,154.122 (Vernon 2008). The hearing on the motion to modify contains no testimony that applying the guidelines would be unjust or inappropriate, and the Attorney General does not argue that the application of the guidelines in this case is either unjust or inappropriate.
We hold the trial court erred in the manner it calculated A.J.'s arrearage and that its finding that A.J.'s child support obligation during all relevant periods should have been $1,200 per month was arbitrary. Accordingly, we reverse the trial court's order of July 13, 2007, awarding retroactive child support. We remand this cause to the trial court for further hearings as necessary to establish whether the trial court should order retroactive child support, and the amount, if any, that should be awarded.[7]
REVERSED AND REMANDED.
NOTES
[1] To protect the privacy of the parties involved in this appeal, we identify them by their respective initials. See TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2008).
[2] Although Hardy did not fully explain her calculation, she apparently utilized the Attorney General's 2007 tax charts. See Employed Persons 2007 Tax Chart, Office of Texas Attorney General, http://www.oag.state.tx.us/cs/ taxcharts/2007taxchart.pdf (last checked March 16, 2009). According to the chart, A.J.'s gross wage produces a net resource figure of approximately $7,951.69. Hardy, however, appears to have used an assumed net resource figure of $6,000.00 and then multiplied that amount by twenty percent to reach her conclusion that $1,200.00 equaled A.J.'s presumptive monthly support obligation. See Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, secs. 154.125, 154.126, 1995 Tex. Gen. Laws 113, 162-63 (amended 2007) (current versions at TEX. FAM.CODE ANN. §§ 154.125, 154.126 (Vernon 2008)) (providing a presumptive child support guideline of twenty percent for one child when the obligor's net resources are $6,000.00 or less, and providing the procedure to follow if the obligor's net resources exceed the $6,000.00 monthly amount).
[3] At the hearing on the retroactive support request, no party asked the trial court to take judicial notice of the testimony from the prior jury trial that involved modifying B.S.'s right to designate the child's primary residence. In its brief, the Attorney General refers to evidence of A.J.'s 2002 and 2003 income contained in the transcript of the prior trial. We also note that the trial transcript is included in the record on appeal because A.J. requested its inclusion. A.J.'s brief also cites to evidence from the trial transcript to support his arguments. We further note that none of the parties filed any objections to our consideration of the testimony from that trial in this appeal. However, the testimony from the prior jury trial did not address A.J.'s annual wages in 2004 or 2005. The trial court's error, if any, in relying on the testimony from the hearing of a related proceeding is not argued by either party as constituting error. See Pat Baker Co., Inc. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998) (holding it is "axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error"). Thus, whether the trial court erred in relying on evidence introduced during that trial to reach its decision on retroactive support is not properly before us.
[4] Although the Legislature amended the grounds for modification after the Attorney General filed the modification request at issue here, the changes are not pertinent to this appeal. Therefore, we cite the current version. Compare Act of May 17, 2007, 80th Leg., R.S., ch. 363, § 6, 2007 Tex. Gen. Laws 665, 667 with Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 21, 2003 Tex. Gen. Laws 2987, 2993.
[5] Because it found no abuse of discretion in a trial court's refusal to modify a prior child support order, the First Court of Appeals expressly declined to decide "whether section 154.131 is applicable in claims for retroactive modification, as opposed to a trial court's decision to make an initial retroactive award of child support against an obligor not subject to an existing support order." Nordstrom v. Nordstrom, 965 S.W.2d 575, 582 n. 7 (Tex. App.-Houston [1st Dist.] 1997, pet. denied). The Corpus Christi Court of Appeals has applied section 154.131 of the Family Code to modification proceedings. In the Interest of D.W.K., No. 13-03-760-CV, 2005 WL 2002464, at *4 (Tex.App.-Corpus Christi, Aug.22, 2005, no pet.) (mem.op.); see also In re H.S.N., 69 S.W.3d 829, 833 (Tex.App.-Corpus Christi 2002, no pet.). Further, in its brief, the Attorney General does not argue section 154.131 does not apply to modification proceedings. Finally, section 156.401(2) of the Family Code, which applies to the modification proceeding before us, expressly contemplates a comparison of the existing child support obligation as ordered by the court and "the amount that would be awarded in accordance with the child support guidelines." TEX. FAM.CODE ANN. § 156.401(2) (Vernon 2008). The child support guidelines are found in sections 154.121 through 154.133 of the Family Code. Id. §§ 154.121-154.133 (Vernon 2008). In our opinion, the guidelines in section 154.131 are, by express reference, applicable to modifications of child support awards being made pursuant to section 156.401(2) of the Family Code.
[6] The Attorney General's 2004 tax chart for employed persons indicates that an employee earning $6,000.00 monthly ($72,000.00 per year) would have net monthly income of $4,478.50. See Employed Persons 2004 Tax Chart, Office of Texas Attorney General, http://www.oag.state.tx.us/cs/taxcharts/2004 taxchart.pdf (last checked March 16, 2009). The Attorney General's 2005 tax chart for employed persons indicates that an employee earning $6,000.00 monthly ($72,000.00 per year) would have a net monthly income of $4,489.75. See Employed Persons 2005 Tax Chart, Office of Texas Attorney General, http://www.oag.state.tx.us/cs/taxcharts/2005 taxchart.pdf (last checked March 16, 2009). Under the child support guidelines, applying a factor of twenty percent for the 2004 and 2005 periods for a person with one child, produces a resulting presumptive monthly child support obligation of approximately $900.00 respectively (2004: ($4,478.50 × 20%); 2005: ($4,489.75 × 20%)). See Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 154.125, 1995 Tex. Gen. Laws 113, 162 (amended 2007) (current version at TEX. FAM. CODE ANN. § 154.125 (Vernon 2008)) (increasing the application of the guidelines from net resources of $6,000 to $7,500).
[7] A.J. makes several additional arguments in support of his issue, but we need not address them as they would not result in any greater relief. See TEX.R.APP. P. 47.1.