# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00108-CV

**Charles Norris, Appellant**

**v.**

**Melissa M. Norris, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
### NO. 06-1317-F395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Charles Norris appeals from a district court order increasing his child-support obligations to his ex-wife, appellee Melissa M. Norris. In four issues, Charles asserts that the district court abused its discretion in determining that a change in circumstances warranted modification and in setting the amount of his child-support obligation at $885 per month.[1] We will affirm the district court's modification order.

## BACKGROUND

The marriage of Charles and Melissa was ended by an agreed divorce decree signed on August 29, 2006. The decree named Melissa sole managing conservator of their only child, M.P., and Charles possessory conservator. The decree provided Charles with possession of M.P. "at any and all times mutually agreed to in advance by the parties," and Melissa with possession at all

---

[1] Given the parties' common surname, we will identify them by their first names to avoid confusion.

other times. It did not otherwise specify the parties' visitation rights and did not require Charles to pay Melissa child support, but made each party solely responsible for providing food, clothing, shelter, entertainment, transportation, and other basic necessities for M.P. while the child was in that party's actual possession. The decree also obligated Charles to pay half of M.P.'s unreimbursed medical costs.

On August 19, 2009, Melissa filed a motion to modify in which she requested additional child support, arrearages for additional support imposed retroactively, and attorney's fees. At the hearing on the motion, Charles appeared solely through counsel because he was incarcerated at the time. Melissa presented evidence that she had lost her job in 2008 and had since had to sell her cars, possessions, and her home in order to make ends meet, while also borrowing money. She testified that she had received approximately $140,000 from the sale of her house after deducting taxes and fees, but that amount was "dwindling down pretty quick" as she repaid people from whom she had borrowed money. After selling her house, according to Melissa, she and M.P. had moved in with Melissa's mother, and she was now a full-time student pursuing a business degree without a current income. In addition to her testimony, Melissa introduced a chart of monthly expenses she claimed were attributable to her care of M.P., which totaled $2,475.00 per month. Melissa asked the court to order Charles to pay half of that amount, or $1,237.50 per month, both from that time forward and for the twenty-seven months in which the case had been pending.

Melissa also explained the circumstances under which she had agreed not to obligate Charles to pay child support under the 2006 divorce decree. According to Melissa, she had been earning approximately $100,000 annually at the time of their divorce, while Charles had been working at a restaurant earning about seven dollars per hour. She further asserted that Charles had

2

been engaging in "erratic," drug-addicted behavior, that "[m]y child was scared," and that "I wanted him out of the house."

Melissa further testified that, since the 2006 decree was signed, Charles had only limited possession of M.P.—i.e., leaving Melissa with the responsibility of funding M.P.'s basic necessities—and had not seen the child, now thirteen years of age, in over two-and-a-half years. She also claimed that Charles had never complied with his obligation to pay her half of M.P.'s unreimbursed medical costs.

Additionally, Melissa presented evidence that although Charles was currently incarcerated and had earned limited income prior to that time, he had inherited financial resources from which he could satisfy a child-support obligation. Under the divorce decree, Charles had retained as his sole separate property any right, title, and beneficial interest in and to any trust to which he was a beneficiary. Melissa testified that after Charles's mother died in 2006, Charles had inherited between $500,000 and $750,000 that he and his mother had previously held in a joint trust. Melissa claimed that Charles had told her about this inheritance, showed her bank statements, and had her review these statements with him when he was incarcerated. She also testified that she did not believe that the trust was still in place because she had seen trust documentation or statements and had conversations with Charles's bank indicating that Charles had removed the money from the trust.

Melissa also testified that Charles had well over $500,000 in an Ameritrade account. Her testimony was based on her review of his Ameritrade statements shown to her on the day of the hearing, although the statements themselves were not offered into evidence. Melissa explained that she was not sure if Charles had additional resources, but she asserted that Charles's parents had other

3

assets such as insurance policies and IRAs. Melissa claimed that she had a trust statement in her car, but it also was not offered into evidence.

Charles's trial counsel called no witnesses and presented no evidence on his behalf, although the attorney did cross-examine Melissa regarding her testimony. At the conclusion of evidence, the district court found that application of the statutory child-support percentage guidelines would be inappropriate, that departure from the statutory guidelines was in M.P.'s best interest, that Charles had $3,300 per month in net resources, and that Melissa had no net resources per month. The district court signed a final order modifying the parties' divorce decree to order Charles to pay $885 per month in child support, $9,735 in arrearages based on modified retroactive support for the prior eleven months, and $4,000 in attorney's fees. This appeal followed.

## ANALYSIS

Charles brings four issues on appeal. In his fourth issue, he argues that there was legally and factually insufficient evidence of a material and substantial change in the parties' circumstances that would permit the court to modify the divorce decree. In his first three issues, Charles argues that the district court abused its discretion in ordering him to pay monthly child-support of $885 and retroactive child support of $9,735 because, respectively, (1) those amounts were not calculated in accordance with the statutory minimum guidelines; (2) the district court, he asserts, improperly considered Charles's age in calculating the child support; and (3) there is no evidence to support the district court's finding that Charles's assets produced or could produce income.[2]

---

[2] In her brief, Melissa also moves to dismiss Charles's appeal in its entirety based on what she claims is his failure to comply with the service requirements under the rules of civil or appellate procedure. We deny the motion.

4

**Standard and scope of review**

When reviewing a modification of a child-support order, we are mindful that the best interest of the child should be the trial court's primary consideration. *See* Tex. Fam. Code Ann. § 156.402(b) (West 2008); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ). Trial courts have wide discretion in determining the best interest of the child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Hollifield*, 925 S.W.2d at 155. Therefore, we will not disturb a trial court's order modifying child support unless the complaining party can show a clear abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re J.A.J.*, 283 S.W.3d 495, 497 (Tex. App.—Beaumont 2009, no pet.); *Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford*, 801 S.W.2d at 109. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

Under this abuse-of-discretion standard as applied here, legal and factual sufficiency are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). We engage in a two-pronged inquiry, determining whether (1) the trial court had sufficient evidence upon which to exercise its discretion; and (2) the trial court erred in its application of that discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

We apply traditional evidentiary-sufficiency review standards when considering the first question,[3] and then we consider whether the trial court made a decision, based on the evidence, that was arbitrary or unreasonable. *Id*. In making that determination, we view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of the decision. *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied). As long as some evidence of a substantive and probative character exists to support the trial court's order, we will not substitute our judgment for that of the trial court. *See Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

**Material and substantial change**

We begin by addressing Charles's fourth issue because it challenges whether the district court had authority to modify the parties' original agreed decree and, thus, logically precedes the other issues. A trial court has the authority to modify an agreed child-support obligation that differs from the statutory guidelines, like that of Charles and Melissa, only if "the circumstances of the child or a person affected by the order have materially and substantially changed" since the rendition of the prior order of child support. *See* Tex. Fam. Code Ann. § 156.401(a-1)

---

[3] When conducting a legal-sufficiency review, we must view the evidence in the light most favorable to the trial court's findings, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Moreover, we must indulge every reasonable inference that would support the trial court's findings. *Id*. at 822. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See id.* at 827. When reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we should set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We must not merely substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

(West Supp. 2012).[4] The party seeking modification has the burden to establish these elements by a preponderance of the evidence. *See Zeifman*, 212 S.W.3d at 589 (addressing modification of conservatorship).

Charles argues that the evidence is legally and factually insufficient to support the district court's implied finding that the requisite material and substantial change had occurred. He suggests that because the original decree did not specify the parties' financial status at the time, evidence of Melissa's current financial circumstances did not suffice to establish a material and substantial change. He also emphasizes that Melissa testified that she currently has some money left over from the sale of her home and that, in his view, she failed to present evidence that she was unable to obtain employment. To the extent that Charles is contending that Melissa was categorically required to show that she has no money, was unable to obtain employment, or that the decree had to include specific baseline financial information regarding the parties in order to show a significant and material change in circumstances, we reject those premises. Rather, the proper focus is whether the evidence Melissa provided concerning her historical and current financial circumstances, that of Charles, and that of their child was sufficient to enable the district court to examine and compare the circumstances at the time of the initial order with the circumstances existing at the time of modification in order to determine whether there had been a material and

---

[4] The full text of section 156.401(a-1) is—

If the parties agree to an order under which the amount of child support differs from the amount that would be awarded in accordance with the child support guidelines, the court may modify the order only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition.

Tex. Fam. Code Ann. § 156.401(a-1) (West Supp. 2012).

7

substantial change. *See In re C.C.J.*, 244 S.W.3d 911, 917-18 (Tex. App.—Dallas 2008, no pet.) (citing *In re J.R.D.*, 169 S.W.3d 740, 743-44 (Tex. App.—Austin 2005, pet. denied)). And she did so here.

Regarding historical evidence of her financial circumstances, Melissa testified that at the time of the divorce she was earning approximately $100,000 per year and was living in her own home with no mortgage payment, though she was required to pay property taxes. As to her current financial status, she testified that she lost her job in 2008 and remained unemployed. She testified that she had sold her cars, her home, and other possessions, while also borrowing money from others. Melissa also testified that since the divorce, Charles had become the sole beneficiary to a trust worth between $500,000 and $750,000. She also testified to the increased financial needs of M.P., which included certain new costs, such as academic fees for college entrance exams. Further, the agreed decree of divorce provided that each party would provide for M.P.'s needs while he was in that parent's actual possession. While the decree contemplated a shared arrangement, Charles was incarcerated after the divorce decree was signed and, consequently, Charles has rarely, if ever, had possession of M.P. Charles did not dispute any of Melissa's testimony regarding the changed circumstances surrounding the parties and their child.

This evidence is both legally and factually sufficient evidence to support a finding that circumstances had changed substantially and materially since the rendition of the original decree. As such, the district court did not abuse its discretion in determining that modification was warranted.

We overrule Charles's fourth issue.

**The modification**

Having determined that modification was authorized under the family code, we turn to Charles's remaining issues, which challenge the portions of the modification order requiring him to pay future child support in the amount of $885 per month and arrearages of $9,735 based on retroactive application of that monthly amount. All three issues concern the district court's decision to deviate from the statutory guidelines established by the Legislature for the award of child support. *See* Tex. Fam. Code Ann. § 154.122 (West 2008).

Under these guidelines, the application of which is rebuttably presumed to be in the child's best interest, *see id.* § 154.122(a), trial courts determine the appropriate level of support based on net resources available, which include the following:

> (1) 100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);
>
> (2) interest, dividends, and royalty income;
>
> (3) self-employment income;
>
> (4) net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation); and
>
> (5) all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits other than supplemental security income, unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.

*Id*. § 154.062(b) (West Supp. 2012).[5] Courts must require parties to provide this information to the court. *Id*. § 154.063 (West 2008).

---

[5] In 2011, the Legislature made certain revisions to the statute that are not implicated by this appeal. We cite to the most current version of the statute for convenience.

In the absence of evidence of wage and salary income, courts must presume that the party has wages or salary equal to the federal minimum wage for a forty-hour week. *Id*. § 154.068 (West 2008); *Monroy v. Monroy*, No. 03-10-00275-CV, 2011 WL 3890401, at *5 (Tex. App.—Austin Aug. 31, 2011, pet. denied) (mem. op.). Incarceration alone does not rebut the minimum-wage presumption, and there is no legal presumption that an inmate has no assets. *Monroy*, 2011 WL 3890401, at *5 (citing *In re M.M.*, 980 S.W.2d 699, 700-01 (Tex. App.—San Antonio 1998, no pet.)). Courts consider these resources, then deduct certain expenses to determine the net monthly resources available. *See* Tex. Fam. Code Ann. §§ 154.061-.062 (West 2008 & Supp. 2012). Next, the courts apply an assigned percentage—here, 20%—to the first $7,500 of those net monthly resources. *See id.* (West Supp. 2012).

The family code allows courts to deviate from the guidelines in situations where its application would be "unjust" or "inappropriate" under the circumstances. *See id*. § 154.122(b). In determining whether application of the guidelines would be unjust and inappropriate, courts must consider several issues, including "any financial resources available for the support of the child," as well as the "amount of the obligee's net resources including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed and including an increase or decrease in the income of the obligee or income that may be attributed to the property or assets of the obligee . . . ." *Id*. § 154.123(b) (West 2008). The court may also consider "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parties." *Id*. § 154.123(b)(17). If a trial court determines that application of the guidelines is not appropriate, the court must include in its order modifying child support certain statutorily required findings. *See id.* § 154.130(b) (West Supp. 2012).

The district court made the following findings concerning the basis for its award of $885 per month in child support:

1.  The application of the percentage guidelines in this case would be unjust or inappropriate.

2.  The net resources of Charles Perry Norris per month are $3300.00.

3.  The net resources of Melissa M. Norris per month are $0.

4.  The percentage applied to the first $7,500 of Charles Perry Norris's net [monthly] resources for child support is 20 percent.

5.  The specific reasons that the amount of support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of section 154.125 of the Texas Family Code are: the Court found this variation to be in the best interest of the child based upon the anticipated resources of Charles Perry Norris, who is determined to be capable of earning minimum wage in addition to his net resources.

*See id.* The import of the district court's findings is that it awarded monthly child support representing (1) the application of the statutorily-prescribed percentage of 20% to the $3,300 it found to be Charles's net monthly resources, yielding a monthly child-support payment of $660; plus (2) 20% of $1,125, a figure roughly equal to the after-tax monthly earnings of a person earning the federal minimum wage ($7.25 per hour) for a forty-hour week, taking the standard deduction and claiming one personal exemption,[6] yielding $225, for a total of $885 per month. Charles's first two issues challenge the latter component of the award, and his third issue challenges the former.

---

[6] The district court noted that the standard minimum wage child support for one child was, at that time, $225. This figure is in line with the tax charts promulgated by the attorney general to assist in calculating an obligor's net income for child support purposes. *See* Tex. Fam. Code Ann. § 154.061(b) (West 2012). The relevant tax chart is printed in the annotated statutes and prior years' charts are also available on the attorney general's website. *See* Office of the Attorney General 2011 Tax Charts, https://www.oag.state.tx.us/cs/taxcharts/2011taxchart.pdf (last visited Feb. 22, 2013).

*Earning capacity*

Charles's first two issues are premised on the view that the district court determined that he was capable of earning *more* than minimum wage, determined his monthly net resources of $3,300 based on his earning capacity, and deviated from the guidelines on that basis. This view is predicated on oral statements that the district court made during the modification hearing. In his first issue, Charles fixes upon a statement by the district court to the effect that Charles "should be able to earn, at least, $4,000 a month on top of the minimum wage job using the assets available for him and any skills that might be available work beyond minimum wage." Charles perceives this statement as tantamount to a finding by the district court that he was intentionally unemployed and that this is why it deviated from the guidelines. Based on that premise, he argues that the district court abused its discretion in deviating from the guidelines because the evidence showed Charles was currently incarcerated and had only ever been employed at a minimum-wage or low-wage job, and because there was no evidence that he had any education, skills, or training to assist him in obtaining higher paying employment such that he could be considered to be intentionally unemployed or underemployed. *See id*. § 154.123(b). Similarly, in his second issue, Charles complains of an oral statement by the district court that, "[G]iven his age, [Charles] should be able to do better than a minimum wage job," and urges that the court improperly used his age to determine his earning potential or capacity.

While Charles takes issue with certain oral statements made by the district court and seems to believe that the $3,300 net resources figure found by the court is based on his earning potential in light of his age, only the court's findings of fact and conclusions of law are material to our review, and they state otherwise. *See In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam). What the district court found in regard to Charles's earning potential, as previously

12

indicated, was that Charles "is determined to be capable of earning minimum wage"—a fact that Charles does not dispute and which the family code presumes in the absence of other evidence, *see* Tex. Fam. Code Ann. § 154.068—and that the deviation from the guidelines was warranted because Charles could earn these amounts "*in addition* to his net resources," necessarily assets other than a salary because he had no job during his incarceration. The district court made no other finding relating to earning potential, intentional unemployment, or intentional underemployment in deviating from the guidelines. And given the district court's discretion to consider "any other reason consistent with the best interests of the child, taking into consideration the circumstances of the parents," *see id.* § 154.123(b)(17), and on this record, we cannot say that it abused its discretion in deviating from the guidelines to award additional monthly child support predicated on Charles's capability of earning minimum wage. Accordingly, we overrule Charles's first and second issues on appeal.

### Net monthly resources

In his third issue, Charles challenges the district court's finding that he has net monthly resources of $3,300. Charles argues that there is no evidence or insufficient evidence to support any determination regarding the nature, value, and liquidity of any assets he may have had in determining his net resources and establishing his child-support obligation.

Section 154.062 of the family code instructs the district court to calculate net resources for the purpose of determining child-support liability. *Id*. § 154.062. There must be some evidence of a substantive and probative character of net resources in order for this duty to be discharged. *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When determining the net resources available for child support, the court may assign

a reasonable amount of deemed income attributable to assets that do not currently produce income. Tex. Fam. Code Ann. § 154.067(a) (West 2008). The court may also assign a reasonable amount of deemed income to income-producing assets that a party has voluntarily transferred or on which earnings have intentionally been reduced. *Id*. § 154.067(b).

Here, Melissa testified that, after the death of his mother, Charles inherited a trust worth between $500,000 and $750,000. She also testified that Charles closed his account with the bank that administered the trust. She further testified that she viewed statements indicating that he had over $500,000 in an Ameritrade account.

Charles urges that no trust or Ameritrade statements were introduced into evidence to support these amounts, and that no representatives from any bank testified to support Melissa's assertions. He further complains that Melissa did not specify the date of any statements she saw, or as to character of the account—whether it was comprised of stocks, bonds, or other funds. He further contends that there was no testimony regarding the liquidity of the Ameritrade account, and no testimony that the alleged Ameritrade account belonged solely to Charles.

While Charles depicts Melissa's testimony as "nothing more than mere speculation" about his assets and thus no evidence to support the district court's findings, we conclude instead that it was legally sufficient and that his current complaints would have been more appropriate topics for cross-examination at trial. Melissa's testimony about the assets was not tested in cross-examination,[7] nor was it controverted with financial records or any other evidence. Melissa's uncontroverted testimony was some evidence of a substantive and probative character of Charles's net resources. Accordingly, we conclude that there was legally and factually sufficient evidence

---

[7] Indeed, it appears from trial counsel's statements to the court that, in fact, he had the Ameritrade statements in his possession and was the person who provided them to Melissa in advance of her testimony.

to support the district court's order and thus, the district court did not abuse its discretion. *See Newberry*, 146 S.W.3d at 236 (uncontroverted testimony that appellant earned $150,000 per year was some evidence to support child-support award); *Monroy*, 2011 WL 3890401, at *6 (court did not abuse discretion in basing child-support award on only evidence in the record—appellee's undisputed testimony regarding appellant's income and proceeds from joint real estate sale); *Lozano v. Lozano*, No. 13-08-00536-CV, 2009 WL 4882816, at *9 (Tex. App.—Corpus Christi Dec. 17, 2009, no pet.) (mem. op.) (court did not abuse discretion in relying on appellee's uncontroverted testimony regarding appellant's income to determine child-support award); *see also In re N.T.*, 335 S.W.3d 660, 666-67 (Tex. App.—El Paso 2011, no pet.) (court did not abuse discretion in relying on appellee's testimony concerning appellant's earnings in determining child-support despite appellant's controverting evidence).

Charles also complains of the district court's specific conclusion that his assets provided him with a net monthly income of $3,300. The uncontroverted evidence indicated that Charles had assets in excess of $500,000. Viewed in the light most favorable to the trial court's decision, the court's determination that those assets could produce $3,300 per month was not arbitrary or unreasonable. Because some evidence of a substantive and probative character supports the trial court's decision, Charles has failed to show reversible error. Accordingly, we overrule Charles's third issue.

## CONCLUSION

Having overruled each of Charles's issues on appeal, we affirm the district court's modification order.

15

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed:   February 27, 2013