

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-19-00544-CV

**IN THE INTEREST OF A.V.T.**

From the 293rd Judicial District Court, Maverick County, Texas
Trial Court No. 141130350MCV
Honorable Maribel Flores, Judge Presiding

Opinion by:       Liza A. Rodriguez, Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                  Patricia O. Alvarez, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: March 31, 2021

REVERSED AND REMANDED

This proceeding arises from Mother's "Motion to Enforce Cash Medical Support and Modify Child Support Order." Father[1] appeals from the trial court's order modifying his child support obligations and ordering him to pay medical support arrears. He brings six issues on appeal.[2] We reverse and remand for further proceedings.

1.      Father argues the trial court erred in granting Mother's "Motion to Enforce Cash Medical Support." In her motion to enforce, Mother stated that under the trial court's original order, Father

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d).

[2]We note that Father claims to have presented eleven issues in the "Issues Presented" section of his brief. However, the argument section of his brief has only six argument sections. Thus, we construe six issues on appeal. To the extent Father claims to bring an issue in his "Issues Presented" that is not adequately briefed in his six argument sections, we hold that he has inadequately briefed those issues and waived them on appeal. *See* TEX. R. APP. P. 38.1(i).

was ordered to pay "(50%) coverage of [the] uninsured portion of the medical or health care expenses that are incurred by the child." Mother alleged that Father had failed to comply with this order and attached a bill totaling $428.15 in uninsured medical or healthcare expenses, arguing that Father was responsible for half the amount, or $214.08. During the hearing, Mother testified to additional uninsured medical or healthcare expenses she incurred on behalf of A.V.T. On cross-examination, Mother admitted that she had not presented the additional uninsured medical or healthcare expenses to Father before the hearing, thus giving him an opportunity to pay his share. After the hearing, the trial court ordered Father to pay $445.86 (half of $891.72) in uninsured medical or healthcare expenses.

On appeal, Father argues the trial court erred in ordering him to pay $445.86 in uninsured medical or healthcare expenses because he was not given notice before the hearing in accordance with section 157.002 of the Texas Family Code that Mother would be requesting that he pay additional uninsured medical or healthcare expenses in excess of $214.08. Section 157.002(a) requires a motion for enforcement to

(1) identify the provision of the order allegedly violated and sought to be enforced;

(2) state the manner of the respondent's alleged noncompliance;

(3) state the relief requested by the movant; and

(4) contain the signature of the movant or the movant's attorney.

TEX. FAM. CODE ANN. § 157.002(a). Subsection (b)(1) requires a motion for enforcement of child support to "include the amount owed as provided in the order, the amount paid, and the amount of arrearages." *Id*. § 157.002(b)(1). The record reflects that in her motion, Mother specifically requested the trial court order Father to pay $214.08 in uninsured medical or healthcare expenses. Father argues Mother did not comply with section 157.002 because she requested the trial court order Father to pay in excess of $214.08 for expenses that were never plead and for which Father

had no notice. Mother responds that Father did not file special exceptions to her motion to enforce and thus waived any error. However, Father had no reason to believe he would have needed to specially except to Mother's pleadings until the time of trial when she sought reimbursement for an amount in excess of $214.08. And, once Father elicited testimony from Mother on cross-examination that she had never sought reimbursement from Father before the hearing, he objected to her seeking reimbursement in an amount over $214.08. Thus, we hold Father did not waive any error.

The purpose of a motion for enforcement is to provide notice of the allegations for which the opposing party must prepare a defense at the hearing on the motion. *In re H.G.-J.*, 503 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Mother admitted at trial that she had not given any notice to Father of the additional uninsured medical or healthcare expenses for which she was seeking reimbursement. We therefore reverse the trial court's order as to uninsured medical or healthcare expenses and remand for further proceedings on Mother's motion for enforcement. *See id.*

2. With respect to modification, Father argues the trial court erred in modifying the amount of his child support because there is no evidence to support the trial court's finding regarding his net resources. Specifically, Father complains about the trial court's reliance on his annuity as part of his net resources. In its order, the trial court found that Father's net resources were $1,070.00 per month, which was an amount agreed to by Father as reflected in the trial court's original order. However, Father argues as of the modification proceeding, the agreement no longer applies. We agree with Father. His agreement as to the original proceeding is not evidence of his net resources in this proceeding. The trial court also found that Father "received a $100,000.00 lump sum payment from his annuity and will use that amount to calculate his net resources." The trial court

found "that from the period of August 8, 2018 through May 5, 2019 [Father's] monthly net resources are $9,904.00." The trial court based its child support judgment on these findings.

A trial court may modify a child support order when there has been a material and substantial change in circumstances. TEX. FAM. CODE ANN. § 156.401(a)(1). We review the trial court's order for an abuse of discretion. *In re J.A.J.*, 283 S.W.3d 495, 497 (Tex. App.—Beaumont 2009, no pet.). Under an abuse of discretion standard, legal and factual insufficiency are not independent reversible grounds, but are relevant factors in assessing whether the trial court abused its discretion. *Razo v. Vargas*, 355 S.W.3d 866, 870 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its application of that discretion. *Bush*, 336 S.W.3d at 729; *In re J.M.C.*, 395 S.W.3d 839, 844 (Tex. App.—Tyler 2013, no pet.); *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866-67 (Tex. App.—Dallas 2011, no pet.).

On appeal, Father agrees that his "annuity represents personal injury settlement proceeds." Father argues that "to determine what portion an annuity constituted net resources for purposes of child support, a determination must be made as to how much of the payment(s) was attributable to the return of principal." For support, Father cites *In re A.A.G.*, 303 S.W.3d 739 (Tex. App.—Waco 2009, no pet.). However, this court in *Mansfield v. Mansfield*, No. 04-18-00551-CV, 2019 WL 6138984, at *1 (Tex. App.—San Antonio Nov. 20, 2019, pet. denied), rejected the Waco court's analysis in *In re A.A.G.*

In *Mansfield*, 2019 WL 6138984, at *1, we considered whether the trial court erred "in including the monthly payments he receives from a pre-marital structured settlement annuity in the amount of his net resources." We noted that the appellant's annuity was the result of a

structured settlement agreement related to his work-related accident. *Id*. In considering whether the trial court erred in including the appellant's annuity as part of his net resources, we first considered the statutory definition of "resources" in section 154.062 of the Texas Family Code. *Mansfield*, 2019 WL 6138984, at *2. We noted that "[r]esources" is defined to include "all other income actually being received, including . . . annuities . . . ." *Id.* (quoting TEX. FAM. CODE § 154.062(b)(5)). However, "[r]esources do not include return of principal or capital." *Id*. (quoting TEX. FAM. CODE § 154.062(c)(1)).

As in the instant case, the appellant in *Mansfield* relied on the Waco court's decision in *In re A.A.G.* for his argument that the trial court erred in including the monthly annuity payment as resources. *Id.* We noted that in *In re A.A.G.*, the "trial court had excluded monies received from an annuity created from the proceeds of a personal injury settlement by creating a distinction between an annuity and a settlement annuity for purposes of determining net resources under Texas Family Code Section 154.062." *Id.* (quoting *In re A.A.G.*, 303 S.W.3d at 740). The Waco court examined the nature of an annuity and asserted that "[a]ll annuities have three critical components."

> For the payment of a sum of money by one person or entity, the recipient of the payment will pay money to another person the amounts on the dates agreed to in the annuity contract. Thus, the three critical elements are (1) the receipt of money, (2) the passage of time, and (3) the payment or return of money. Inherent in this process is the inclusion of interest for the acceptance of the payout of the settlement over time.

*In re A.A.G.*, 303 S.W.3d at 741. The Waco court then held the trial court erred in excluding the entire annuity payment because the trial court was required to decide "what portion of the payments being received represent[ed] a return of principal and what portion represent[ed] the interest being earned for the use or forbearance of the entire amount of the settlement proceeds." *Id*. at 741-42. The Waco court concluded the trial court "should only have excluded the portion of

the annuity payment representing a return of principal." *Id.* at 741. In *Mansfield*, we "decline[d] to follow the Waco court's holding." *Mansfield*, 2019 WL 6138984, at *3.

Noting that we were required to "give the words of a statute their plain meaning without adding to the words under the guise of statutory interpretation," we emphasized "the legislature included all income received from annuities in the definition of the term 'resources,' without drawing any distinction between a settlement annuity and any other type of annuity." *Id*. We reasoned that "[i]f the legislature had intended to draw a distinction between different types of annuities, it could have done so." *Id*. We also noted that "prior to the recodification of the Family Code in 1995, section 14.053(b) defined net resources as including 'all other income actually being received, including but not limited to . . . annuities, . . . interest income from notes but not including return of principal or capital." *Id*. at *3 n.6. We emphasized that the "legislative history from the 1995 recodification reveals that the recodification of section 14.053(b) was intended as a nonsubstantive recodification." *Id*. "Accordingly, in recodifying section 14.053(b) to add subsection headings in section 154.062, thereby listing 'interest income from notes' as being included in resources while listing 'return of principal or capital' as being excluded from resources, the Legislature only meant to clarify the phrase 'interest income from notes but not including return of principal or capital,' not to substantively change its meaning." *Id*. Thus, we held in *Mansfield* that the trial court did not err in including the monthly annuity payments in appellant's resources for purposes of calculating the child support and medical support the trial court ordered him to pay. *Id*. at *3. Pursuant to this holding in *Mansfield*, we disagree with Father's argument that the trial court in this case was required "to determine what portion of an annuity constituted net resources for purposes of child support, a determination must be made as to how much of the payment(s) was attributable to the return of principal." Instead, we need only review the record to

determine if there was any evidence to support the trial court's finding regarding an annuity received by Father.

At the hearing, Mother testified that Father was paying $400 in child support plus $50 from Medicaid. When asked how Father was paying child support when he was incarcerated, Mother replied "[t]hrough his annuity." She testified he has an annuity "set for life," and his child support is taken out of his payment before being deposited in his account. She testified that "[l]ast year he received [a] lump sum [payment] of $100,000," which he placed in a CD. Mother testified she had knowledge of his annuity because she had seen "all his paperwork" and because she "used to take care of his bank accounts while he was incarcerated until [they] had some problems." Mother testified, "I actually know what he gets and what is in his bank accounts." Mother testified that Father's annuity stemmed from a settlement related to his personal injury lawsuit and that he will receive payments until he dies. Father offered no evidence to refute Mother's testimony. We therefore conclude there was evidence that Father was receiving an annuity and that last year he received a lump sum payment of $100,000 from this annuity.

In addition to this $100,000 lump sum payment, the trial court found that Father's net resources are $1,070.00 per month. To account for the $100,000 lump sum payment, the trial court found that from August 8, 2018 to May 5, 2019, Father's monthly net resources were $9,904.00. However, in reviewing the record, we find no evidence to support Father receiving monthly net resources in this amount. It is undisputed that Father is currently incarcerated and is not employed. Mother testified at the hearing that Father receives a monthly annuity payment, and argues that she testified to a specific amount when she stated the following:

> Q: Okay. [Mother,] only—not probably, not maybe, none of that; only direct knowledge that you know. Do you have direct knowledge that you know how much money [Father] receives today?
>
> A: Not the exact amount, probably 37.

Mother argues that when she testified to "37," she meant $3,700.00. However, it is not clear from the record that she meant $3,700.00. Mother also points to the trial court's original order, which stated that Father received a "monthly settlement check." This statement in the original order is also not sufficient to support a finding that Father receives a specific amount every month from his annuity. Therefore, while there is evidence in the record to support resources in the amount of a $100,000 lump sum payment, we find no evidence to support Father receiving monthly resources in the amount of $1,070.00. Because the trial court relied on its $1,070.00 finding in calculating its child support judgment, we conclude the trial court abused its discretion in its calculations regarding child support.

3.      Father next contends that the trial court erred by granting *any* modification of child support. In cases like this one, in which the parties' agreed child-support order provides for a different amount of child support than the amount that would have been awarded under the child-support guidelines, "the court may modify the order only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." TEX. FAM. CODE ANN. § 156.401(a–1); *id.* § 154.124(a), (b) (permitting parties to agree to child-support provisions that vary from guidelines as long as court finds that agreement is in child's best interest). The requesting party bears the burden to prove that a material and substantial change has occurred. *Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We review the trial court's decision for abuse of discretion. *In re J.A.J.*, 283 S.W.3d at 497.

At the hearing, there was evidence that since the original order was rendered, Father has had another child; A.V.T. is now enrolled in private school; and Mother pays the tuition for A.V.T.'s school. Mother further testified that she has purchased a home for herself and A.V.T. Additionally, because Father has been incarcerated since the original order, Mother testified she is

now completely responsible for A.V.T.'s care. Finally, Mother testified about the lump sum payment of $100,000.00 received by Father. We therefore hold there was some evidence from which the trial court could determine the circumstances of A.V.T. or a person affected by its original order had materially and substantially changed since the rendition of the original order. We find no abuse of discretion by the trial court.

4.      Father next argues that without evidence of his net resources, and given his incarceration, the trial court was required to determine that he had no net resources. However, as noted above, there was evidence at the hearing of the lump sum annuity payment in the amount of $100,000.00. We therefore conclude the trial court did not abuse its discretion in finding Father had net resources.

### CONCLUSION

Because Father was not given notice of the additional uninsured medical or healthcare expenses for which Mother sought reimbursement at the hearing, we reverse the trial court's order as to uninsured medical or healthcare expenses and remand for further proceedings. Additionally, (1) because the trial court relied on both the lump sum payment of $100,000.00 and monthly resources in the amount of $1,070.00 in determining that Father had monthly net resources in the amount of $9,904.00, and (2) because the trial court based its child support order on an amount ($1,070.00) for which there was no evidence presented at the hearing, we reverse the trial court's August 1, 2019 order and remand for further proceedings consistent with this opinion. Having concluded that the trial court's order should be reversed and the cause remanded for further proceedings, we need not consider Father's remaining issues.[3]

Liza A. Rodriguez, Justice

---

[3]In his remaining issues, Father argues (1) the trial court erred because it ordered medical support exceeding nine percent of Father's net resources; and (2) the trial court should have made a finding about Mother's net resources.