**Reversed and Remanded and Opinion filed March 12, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00589-CV

_____

### ALLEN CHRISTOPHER TRUMBULL, Appellant

### V.

### SHELBY HENLEY TRUMBULL, Appellee

**On Appeal from the 97th District Court
Montague County, Texas
Trial Court Cause No. 2011-0090M-CV**

## OPINION

The principal issue in this case is whether the trial court's determination of child support constitutes an abuse of discretion. The trial court computed the support obligation using the obligor's earning capability, rather than his actual earnings. Because there is no evidence to support the implied finding of intentional underemployment, we reverse the trial court's order and remand for additional proceedings.

BACKGROUND

In March of 2011, Shelby Trumbull filed for divorce from her husband Chris. Two children had been born of the marriage. The trial court named Shelby joint managing conservator with the exclusive right to designate the children's primary residence. Chris received standard visitation rights.

Chris's child support obligation was the main issue litigated at trial. The evidence showed that he had held a few jobs during the course of the marriage. In April of 2000, Chris was hired as a sales manager for Progressive Concepts, a distributor of audio, video, and cell phone equipment. Shelby never knew the exact amount of Chris's salary. The couple kept separate bank accounts, and Chris prevented Shelby from participating in household financial matters. According to Shelby, when Chris began working at Progressive Concepts, he had boasted that he could earn between $60,000 and $80,000 annually because his salary was based on commission. Chris testified that the most he actually made "was maybe forty, forty-four [thousand dollars]."

Chris eventually left Progressive Concepts and opened his own liquor store in October of 2008. Financing for the store was provided by Shelby's father. During the early stages of the business, Chris paid himself a gross salary of $3,000 per month, or $36,000 per year. The business declined with the economy, becoming less profitable as the years progressed. On some occasions, Chris would not pay himself at all to keep the business open. After Shelby petitioned for divorce, her father foreclosed on the business, sending Chris into a period of unemployment.

Chris returned to his job at Progressive Concepts in August of 2011. At the time of trial, he was still gainfully employed, but earning less than in his previous position. Paystubs reflect that he is currently paid a gross salary of $2,000 per

month, plus commission. Business is cyclical in the industry, and his commission checks "have never been anything huge." Chris postulated that his more senior colleagues were earning about $30,000 annually, and he did not realistically expect to earn more than what they made. Based on his own commission payments through April of 2012, Chris projected an annual gross salary of $29,563.64.

In addition to his regular employment, Shelby testified that Chris had worked occasional weekend jobs during their marriage. He sometimes installed electronics in cars and boats, earning between $800 and $1,000 per weekend. Chris indicated that the market for these accessories has been "pretty much killed off." He also testified that he was presently assisting his friend's production company, though not for compensation.

The record does not contain any tax returns. The evidence reflects that Chris did not pay his taxes in some years, unbeknownst to Shelby. When a joint return was filed, Shelby testified that she signed the document without reviewing the income reported. The only documentary evidence of Chris's former salaries consists of two W-2 slips: one from the liquor store, dated for tax year 2008, reporting wages of $7,388.24; and the other from Progressive Concepts, dated 2006, reporting wages of $25,228.05.

In its findings of fact, the trial court determined that Chris is currently capable of earning $60,000 per year. Applying the Family Code guidelines to that earning capability, the court ordered Chris to pay $1,000 per month in child support for his two children. In addition to this child support, the court also ordered Chris to pay $192 per month for the children's health insurance. Chris appeals from this judgment.

3

## ANALYSIS

We review the trial court's determination of child support for an abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re M.K.R.*, 216 S.W.3d 58, 61 (Tex. App.—Fort Worth 2007, no pet.). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under this standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are relevant factors in assessing whether the trial court abused its discretion. *See In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.). The trial court does not abuse its discretion if the record contains some evidence of substantive and probative character to support its decision. *See In re M.N.G.*, 147 S.W.3d 521, 530 (Tex. App.—Fort Worth 2004, pet. denied).

On appeal, Chris challenges the manner in which the trial court calculated his child support obligation. The evidence is undisputed that Chris earns a base salary of $2,000 per month through his current employer. With commissions included, his gross annual income is estimated at less than $30,000. The trial court determined, however, that Chris's support obligation should be based on an earning potential of twice that figure. The court appears to have invoked the authority of section 154.066 of the Texas Family Code, which states that a support order may be based on the earning potential of the obligor, rather than his actual income, "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment." *See* Tex. Fam. Code § 154.066. Chris argues that this section should not have been applied because Shelby did not plead that he was intentionally underemployed, the

trial court did not make an express finding that he was underemployed, and the evidence does not support a finding of underemployment.

Shelby responds that the issue of underemployment is moot because there is sufficient evidence that Chris actually earned $60,000 per year. We disagree. Shelby provided the only evidence of this particular income figure. During trial, she testified that when Chris first started his job, he had "bragged" that he could make between $60,000 and $80,000 annually because his income was based on commission. Speculation of income potential is not evidence of actual earnings. The evidence is undisputed that Chris never earned more than $44,000 per year during the marriage. The evidence also conclusively established that Chris makes less than $30,000 annually at his current position. Because there is no evidence that Chris is actually earning $60,000 per year, the trial court's judgment can be supported only if the evidence supports a finding of intentional underemployment. *See Iliff v. Iliff*, 339 S.W.3d 74, 82 (Tex. 2011) ("[T]he trial court must make a finding of intentional unemployment or underemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record.").

In *Iliff*, the supreme court held that once the obligor has offered proof of his current wages, the obligee bears the burden of demonstrating that the obligor is intentionally underemployed. *Id.* The trial court may consider whether the obligor is attempting to avoid child support by remaining underemployed, but there is no requirement that the obligee prove that the obligor has reduced his income for the purpose of decreasing his child support payments. *Id.* at 80. The court may also consider evidence in rebuttal, including evidence that economic conditions have legitimately precluded full employment or that the obligor has altered his employment to pursue laudable goals and aspirations. *See id.* at 81–82.

In a hearing on a motion for new trial, Shelby testified that Chris is capable of earning $60,000 per year "[i]f he applies himself." Shelby did not explain how this "application" might be realized. By his own account, Chris has never earned more than $44,000 in a given year from regular sources.

Shelby also testified that Chris had occasionally earned supplemental income during the marriage by installing car and boat accessories on the weekends. This evidence does not support a finding of underemployment, however, because Shelby did not testify that this alternative source of income was still available, and Chris indicated that there was no longer a market for these services.

Even if this supplemental income were available, the evidence still does not show that Chris has an earning capability of $60,000 per year. There is no testimony in this record establishing how much supplemental income Chris could expect from his weekend jobs in a given year. Shelby merely testified that supplemental income was generated in the past. But to support a finding of intentional underemployment, it is not enough to simply establish that the obligor is failing to maximize his potential. By statute, the obligee must show that the actual earnings of the obligor are "significantly less" than his earnings potential. *See* Tex. Fam. Code § 154.066; *Iliff*, 339 S.W.3d at 82 ("Trial courts should be cautious of setting child support based on earning potential in every case where an obligor makes less money than he or she has in the past."). Because the record contains no evidence regarding Chris's past annual income from alternative sources, the trial court had no basis for implicitly finding that, without that additional income, he is intentionally making significantly less. *See* Tex. Fam. Code § 154.061 (providing that, whenever feasible, gross income should be computed on an annual basis and then recalculated to determine an obligor's net resources available for child support).

6

In the interest of judicial economy, we also address Chris's issue regarding health insurance premiums. After reviewing the calculations in the trial court's order, it appears that Chris's child support obligation was computed without considering the costs of the children's health insurance. The Family Code mandates that such costs be deducted from the obligor's resources when determining the net resources available for child support. *See id.* § 154.062(d)(5). Therefore, we instruct the trial court on remand to deduct these costs from Chris's resources when it determines his child support obligation.

## CONCLUSION

There is no substantive or probative evidence that Chris actually earns, or is capable of earning, $60,000 per year. Accordingly, we conclude that the trial court abused its discretion when it ordered Chris to pay child support based on that income amount. The trial court's judgment is reversed and remanded for additional proceedings consistent with this opinion.


/s/     Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.