**Opinion filed March 17, 2015, Withdrawn; Appeal Affirmed and Memorandum Opinion filed May 19, 2015.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-14-00024-CV

## IN THE MATTER OF THE MARRIAGE OF JAMILEH MERRIKH AND DAVID HOSSIEN MERRIKH

**On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2010-54021**

## M E M O R A N D U M    O P I N I O N

After a panel of this court issued its opinion in this case, appellant David Merrikh and appellants Noorollah Merrikh and Zarine Motlagh filed two separate motions for rehearing. We deny the motions for rehearing; however, we withdraw our March 17, 2015 opinion and judgment and issue this opinion and judgment in their stead.

In this divorce case, we consider (1) whether the trial court abused its discretion by calculating appellant David Merrikh's child support obligation based on his earning potential rather than his actual income after finding that he was

intentionally underemployed, and (2) whether the evidence is legally and factually sufficient to support the trial courts findings of fact and conclusions of law regarding ownership of a contested tract of real estate. We affirm.

## 1. FACTS AND PROCEDURAL BACKGROUND.

This case presents essentially two separate appeals: a challenge to the trial court's decision on child support and a challenge to the trial court's decision regarding the ownership of real property. We present only the basic background and procedural facts here, reserving detailed presentation of the relevant facts and evidence for our discussion of each appeal.

David Merrikh and Jamileh Merrikh were informally married on August 2, 1999. Jamileh and David have two minor children, S.M. and K.S.M. Jamileh filed for divorce on August 27, 2010. Jamileh joined Noorollah Merrikh, David's father, and Zarine Motlagh, David's mother, to her divorce petition as co-respondents.

The divorce was tried to the court. After the trial, the court granted Jamileh's petition for divorce and filed findings of fact and conclusions of law. The court ordered that David pay $750 per month in child support. The trial court determined that Jamileh owned a tract of real estate known familiarly as the "Mosley Property." The trial court characterized the Mosley Property as Jamileh's separate property and determined that Noorollah and Zarine have no interest in the Mosley Property.

David, Noorollah, and Zarine timely appealed. David appeals the trial court's decision regarding child support. Noorollah and Zarine appeal the trial court's decision regarding ownership of the Mosley Property.

## 2. CHILD SUPPORT

We begin with David's appeal. David challenges the following findings of fact:

20. The court finds that Respondent [David] is intentionally unemployed or underemployed.

21. The Court finds that the amount of net resources that could be earned by Respondent is $3,000 per month.

22. The percentage applied to Respondent's monthly net resources of $3,000 for child support is 25% and, in accordance with the statutory child support guidelines, Respondent is obligated to pay to Petitioner [Jamileh] child support of $750.00 per month in periodic payments of $375.00 on the 1st and 15th of each month.

David challenges the following conclusion of law:

7. Respondent, David Hossein Merrikh, should pay child support in amount of $750 per month.

David contends that Jamileh did not meet her burden to demonstrate that he was intentionally underemployed or unemployed. David further contends that the record does not contain any evidence showing that he earns or is capable of earning $3,000 per month. We conclude the trial court did not abuse its discretion when, after finding that David was intentionally unemployed or underemployed, it calculated David's child support obligation based on his earning potential rather than his actual reported income.

## 2.1. Standard of Review

We review the trial court's determination of child support for an abuse of discretion. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Id.* A trial court abuses its discretion by failing to analyze or apply the law correctly. *Id.* Under this standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are relevant factors in assessing whether the trial court abused its discretion. *Trumbull v. Trumbull*, 397 S.W.3d 317, 319 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The trial court does not abuse its discretion if the record

contains some evidence of substantive and probative character to support its decision. *Id.* at 319–20. We must view the evidence in the light most favorable to the trial court's rulings and indulge every legal presumption in favor of the judgment. *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

## 2.2. Analysis

The trial court can set child support based on the obligor's earning capacity when "the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment." Tex. Fam. Code Ann. § 154.066 (West 2014). The trial court must find that the obligor is intentionally unemployed or underemployed. *Iliff*, 339 S.W.3d at 80. "Intentionally unemployed or underemployed" means the obligor "consciously chooses to remain unemployed or underemployed." *Id.* Here, the trial court did find that David, the obligor, is intentionally unemployed or underemployed.

Once the trial court makes this determination, it can apply the child-support guidelines to the obligor's earning potential. *Id.* at 81. A parent qualified to obtain gainful employment cannot avoid his or her child-support obligations by voluntarily remaining unemployed or underemployed. *Id.* The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. *Id.* at 82.

The trial court's analysis imposes shifting burdens of proof on the obligor and the obligee. Initially, the obligor must offer proof of his or her current wages. *Id.* Here, David met his burden to show his current wages by introducing his tax returns and testifying about his annual income. David testified that he makes $1,200 per month before taxes. Additionally, the trial court admitted David's individual tax returns for the 1999, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011 tax years. Based on these tax returns, David's average adjusted gross income

4

was $12,850 per year, and his average monthly income was $1,070.87.

The obligee then bears the burden of showing that the obligor is intentionally unemployed or underemployed. *Id.* The issue here is whether Jamileh carried her burden to show that David consciously chose to remain un- or underemployed. *See Reddick v. Reddick*, 450 S.W.3d 182, 189 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The trial court was not required to accept as true David's testimony regarding his income and net resources. *See Iliff*, 339 S.W.3d at 83.

The trial court expressly found that David's company, Allstate Used Auto Parts, Inc., was a "sham corporation." Because David did not challenge this finding, we are bound by it. *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied); *London v. London*, 94 S.W.3d 139, 149 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The effect of the court's finding is to dispense with the corporate fiction and treat David and the corporation as one and the same. *See Castleberry v. Branscum*, 721 S.W.2d 270, 271–72 (Tex. 1986). As a result, the trial court reasonably could have considered Allstate's annual income in computing David's net monthly income. *See* Tex. Fam. Code Ann. § 154.061 (West 2014) (annual gross income is starting point for computing net monthly income). The trial court admitted three Wells Fargo Business Account applications for Allstate: one dated September 15, 2009 and the other two dated March 31, 2011. On the September 2009 application, David stated that Allstate's 2008 annual gross sales were $500,000. On both of the March 2011 applications, David stated that Allstate's 2010 annual gross sales were $1 million. Based on the representations in these account applications, the evidence indicates that David was capable of earning between $41,000 and $83,000 per month.

On this record, the trial court reasonably could have concluded that David was capable of earning more than what his individual tax returns indicate and that

5

he consciously chose to remain un- or underemployed when he established a sham corporation and paid himself a meager salary. The evidence is sufficient to support the trial court's finding that David's potential net monthly resources were $3,000. We cannot say the trial court abused its discretion in finding that David (1) was intentionally unemployed or underemployed; (2) had a potential earning capacity of $3,000 per month; and (3) was obligated to pay $750 per month in child support. *See* Tex. Fam. Code Ann. § 154.125(b) (West 2014).

David's sole issue on appeal is overruled.

### 3. THE "MOSLEY PROPERTY"

### 3.1. Facts Relevant to the Real-Property Contest

We turn now to Noorollah and Zarine's appeal. Jamileh and Noorollah and Zarine contest ownership of the Mosley Property.[1] Title to the Mosley Property has been transferred five times. Each transfer of ownership was by general warranty deed. Each deed was recorded.

First, on August 3, 1999, Noorollah and Zarine conveyed the Mosley Property to David (the "August 1999 Deed"). None of the parties challenge the validity of the August 1999 Deed.

Second, on September 20, 1999, David conveyed the Mosley Property to Jamileh (the "September 1999 Deed"). None of the parties challenge the validity of the August 1999 Deed.

Third, on October 18, 1999, Jamileh conveyed the Mosley Property to Noorollah (the "October 1999 Deed"). The October 1999 Deed consists of three pages. The first two pages contain the formal provisions of the deed. The third

---

[1] The Mosley Property is described as: "Lot One Hundred Twenty-Six (126) of South Houston Garden, Number Six (6), a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 2, page 74 Map Records of Harris County, Texas." David's auto parts business is located on the Mosley Property.

page contains a line for noting the date of execution; the identity of the grantor, including the grantor's address; a signature line for the grantor; the notary's attestation clause; and a signature line for the notary. The October 1999 Deed appears to have been signed by Jamileh and notarized by William Giron. Jamileh challenged the validity of this deed in her live petition for divorce. Jamileh asked the trial court to declare the October 1999 Deed void. Jamileh alleged that David deceived her into conveying the Mosley Property to Noorollah.

Fourth, on July 30, 2004, Noorollah conveyed the Mosley Property to David and Jamileh's daughter, S.M. (the "July 2004 Deed"). The July 2004 Deed appears to have been signed by Noorollah and notarized by David. Noorollah and Zarine noted in their answer to Jamileh's petition that they were contesting the validity of the July 2004 Deed in a separate suit. The basis of their challenge was fraud. At the time the July 2004 Deed was signed, S.M. was four years old.

Fifth and finally, on January 20, 2011, S.M., now ten years old, conveyed the Mosley Property to Noorollah (the "January 2011 Deed"). The January 2011 Deed was signed by David purportedly on behalf of his minor daughter. William Giron notarized the deed and attested that S.M. signed the deed. Jamileh challenged the validity of this deed on behalf of S.M. The trial court assigned an attorney ad litem to represent S.M.'s interest in the Mosley Property. David testified that the purpose of the January 2011 Deed was to correct his mistake in creating the July 2004 Deed. David acknowledged that he should not have executed the July 2004 Deed without notifying Noorollah.

Jamileh testified regarding the circumstances surrounding the signing of the October 1999 Deed. Jamileh testified that David showed her only the third page of the October 1999 Deed and demanded that she sign it. She did not see the contents of the deed. She simply complied when David told her to "sign this paper." Jamileh did not know that, by signing the paper, she was conveying the Mosley

7

Property to Noorollah. She testified that David prepared all of the deeds at issue in the divorce case. She testified that David told her the October 1999 Deed would transfer the property to him. Although the October 1999 Deed appears to have been notarized, Jamileh stated that she did not sign in the presence of a notary.

In his testimony, David acknowledged that the various transfers involving the Mosley Property "were not meant to be real." He explained that the transfers were necessary for the "safety of the [auto parts] company"; to protect the company from a "false charge." David did not dispute Jamileh's testimony regarding her signing of the October 1999 Deed.

### 3.2.   Arguments

Noorollah and Zarine challenge the following findings of fact:

> 24. The Court finds that subsequent to such gift and transfer [from David] to Petitioner [Jamileh], Respondent, David Hossein Merrikh, intentionally, knowingly, and fraudulently attempted to transfer the property from Petitioner to others, including [S.M.], David Hossein Merrikh and Noorollah Merrikh.

> 25. The Court finds that such transfers, subsequent to the gift and transfer of the Mosley [P]roperty to Petitioner, were fraudulently made.

They challenge the following conclusions of law:

> 8. The Court finds that Co-Respondents, Noorollah [sic] Merrikh and Zarine Motlagh [sic], have no interest in any property or claim in this case.

> 14. The Court finds that the property known as the Mosley [P]roperty is the separate property of the Petitioner, Jamileh Merrikh.

Noorollah and Zarine argue that the evidence is legally and factually insufficient to support the trial court's finding that the October 1999 Deed was "fraudulently made." Noorollah and Zarine further argue that the trial court's conclusions of law—that (1) Noorollah and Zarine have no interest in the Mosley Property, and (2) the Mosley Property is Jamileh's separate property—are

8

erroneous. Noorollah and Zarine claim that the Mosley Property belongs to them. Focusing on the fraud aspect of the case, Noorollah and Zarine argue first that the evidence is insufficient to establish each element of fraud and second that, even if the evidence was sufficient, Jamileh's fraud claim was barred by limitations.

In response, Jamileh contends that the evidence is sufficient to establish that David committed fraud when he convinced Jamileh to sign the October 1999 Deed. According to Jamileh, David's fraud rendered the October 1999 Deed void. With regard to Noorollah and Zarine's statute of limitations argument, Jamileh first contends that Noorollah and Zarine waived this argument because they did not obtain an express finding on their limitations defense. In the alternative, Jamileh contends that the discovery rule delayed accrual of her fraud claim until 2011.

Despite Jamileh's assertion to the contrary, a deed obtained by fraud is voidable and subject to the four-year residual statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2015); *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). Here, the alleged fraud was committed in 1999, and Jamileh did not assert her fraud claim until 2010 when she filed her petition for divorce. Normally, under these circumstances, Jamileh's fraud claim would be barred by limitations, unless the discovery rule delayed its accrual. However, Jamileh did not plead the discovery rule in her live petition for divorce and therefore waived its applicability. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988). Furthermore, we disagree with Jamileh that Noorollah and Zarine somehow waived their limitations defense when the trial court declined to make express findings on their limitations defense. The trial court implicitly found against Noorollah and Zarine when it concluded that the Mosley Property belonged to Jamileh and that Noorollah and Zarine have no interest in the Mosley Property.

We agree with Jamileh, however, that her challenge to the validity of the

9

deed is not barred by limitations. The issue in this case is not whether Jamileh's challenge to the validity of a voidable deed is barred by limitations. Rather, the issue is whether the October 1999 Deed is *void* because Jamileh lacked the requisite intent to convey the Mosley Property according to the terms of the October 1999 Deed.

In framing this issue, we recognize that the trial court did not expressly conclude the October 1999 Deed was void. However, we are bound to assume the validity of the trial court's judgment. *Leonard v. Eskew*, 731 S.W.2d 124, 131 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *see Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251–52 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). We must construe the judgment and any attendant findings of fact and conclusions of law in a way that sustains the judgment if we are able to do so without doing violence to the language used. *In re L.A.F.*, 270 S.W.3d 735, 739 (Tex. App.—Dallas 2008, pet. denied); *Leonard*, 731 S.W.2d at 132. Accordingly, we must assume the trial court determined favorably to the judgment any omitted findings of fact or conclusions of law necessary to the relief ordered. *Leonard*, 731 S.W.2d at 132; *see Vickery*, 5 S.W.3d at 252. We must uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Greater Hous. German Shepherd Dog Rescue, Inc. v. Lira*, 447 S.W.3d 365, 370 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). Here, the divorce decree states that all deeds subsequent to September 1999 Deed are void. The trial court's conclusions of law imply that Jamileh's challenge to the validity of the October 1999 Deed was not barred by limitations. And the trial court did make findings of fact relevant to Jamileh's intent in signing the October 1999 Deed. Therefore, if the judgment can be sustained on the theory that the October 1999 Deed is void, then we must uphold the trial court's conclusions of law and affirm. *See id.*; *see e.g.*, *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 757 n.11 (Tex. App.—Dallas

2012, no pet.) (concluding that evidence supported trial court's judgment based on defense of laches even though trial court did not make an express conclusion of law regarding the defense of laches); *Leonard*, 731 S.W.2d at 132 (concluding that trial court decided elements of fraud in appellees' favor even though court's findings of fact expressly established only one essential element of fraud).

### 3.1. Standards of Review

### 3.1.1. Legal and Factual Sufficiency

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings are reviewed for factual sufficiency of the evidence under the same legal standards as are applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Because there is a complete reporter's record in this case, the trial court's findings will not be disturbed if there is any evidence of probative force to support them. *Id.* We must give effect to the intended findings of the trial court and affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *Black v. Dallas Cnty. Welfare Unit*, 835 S.W.2d 626, 630 n.10 (Tex. 1992). An omitted finding, supported by the evidence, may be supplied by a presumption that it supports the judgment. *Id.*

A legal-sufficiency challenge will be sustained when the record discloses one of the following situations: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence conclusively establishes the opposite

of the vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620(Tex. 2014). In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the judgment, crediting evidence that a reasonable fact finder could have considered favorable and disregarding unfavorable evidence unless the reasonable fact finder could not. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). We indulge every reasonable inference that supports the trial court's findings. *Waste Mgmt.*, 434 S.W.3d at 156. We cannot substitute our opinion on witness credibility for that of the jury. *City of Keller v. Wilson*, 168 S.W.3d 802, 816–17 Tex. 2005). Nor can we disregard conclusive evidence that is contrary to a verdict. *Id.* at 817. A legal-sufficiency challenge fails if more than a scintilla of evidence supports the factual finding. *See Waste Mgmt.*, 434 S.W.3d at 156. More than a scintilla exists when the evidence as a whole rises to a level enabling reasonable and fair-minded people to have different conclusions. *Id.*

A factual-sufficiency challenge will be sustained if evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ). In conducting a factual sufficiency review, we must consider all of the evidence in the record. *Ortiz*, 917 S.W.2d at 772. Because "[t]he factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony[,]" *Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 729 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), we cannot substitute our own judgment for that of the factfinder, even if we would reach a different answer on the evidence. *GTE Mobilnet of S. Tex.Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The amount of evidence necessary to affirm the factfinder's judgment is far less than that necessary to

reverse its judgment. *Id.*

### 3.1.2. Conclusions of Law

Conclusions of law are always reviewable. *Jean v. Tyson-Jean*, 118 S.W.3d 1, 4 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). They will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Id.* at 5.

A trial court's conclusions of law are reviewed de novo as legal questions, and cannot be challenged on factual-sufficiency grounds. *Id.*; *Texmarc Conveyor Co. v. Arts*, 857 S.W.2d 743, 744–45 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Under de novo review, the reviewing court exercises its own judgment and redetermines each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). We will uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Lira*, 447 S.W.3d at 370. Incorrect conclusions of law do not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*

### 3.2.  Applicable Law

"A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." Tex. Prop. Code Ann. § 5.021 (West 2014). Delivery is an essential element of a valid deed. *See id.* Delivery consists of two elements: (1) the deed must be delivered into the grantee's control, and (2) the grantor must intend the deed to become operative as a conveyance to the grantee. *Chambers v. Equity Bank, SSB*, 319 S.W.3d 892, 900 (Tex. App.—Texarkana 2010, no pet.); *see Hubbard v. Cox*, 13 S.W. 170, 170 (Tex. 1890). If the intent element is lacking, then the deed is void, and subsequent grantees cannot acquire title to the property the deed purports

to convey. *See Adams v. First Nat'l Bank*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.) (absent grantor's intent, delivery does not pass title); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 213 (Tex. App.—Fort Worth 1992, writ denied) (void instrument passes no title); *Estes v. Reding*, 398 S.W.2d 148, 150 (Tex. Civ. App.—El Paso 1965, writ ref'd n.r.e.) (deed delivered without intent is "of no effect"). The question of delivery of a deed is controlled by the intent of the grantor. *Williams v. Anderson*, 414 S.W.2d 731, 734 (Tex. App.—Dallas 1967, no writ). The grantor's intent is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument. *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 262 (Tex. 1974).

Generally, title to transferred property vests upon execution and delivery of the deed. *Id.* at 261. Proof that a deed has been recorded gives rise to a presumption that the grantor delivered the deed with the intent to convey the property according to the terms of the deed. *Id.* at 261–62. To overcome the presumption that delivery was accompanied by the requisite intent, the party challenging the deed's validity must show: (1) the deed was delivered or recorded for a different purpose, (2) fraud, accident, or mistake accompanied the delivery or recording, or (3) the grantor had no intention of divesting herself of title. *Id.* at 262.

Whether the deed has been delivered is a question of fact. *Adams v. First Nat'l Bank*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.). What constitutes delivery is a question of law. *Id.* If evidence tends to show a lack of intent to convey the subject property according to the terms of the deed, then the factfinder has extensive discretion to find that a recorded deed was not actually delivered. *Williams v. Anderson*, 414 S.W.2d 731, 734 (Tex. App.—Dallas 1967, no writ) (discussing *Thornton v. Rains*, 299 S.W.2d 287, 288 (Tex. 1957)).

14

### 3.4. Analysis

### 3.4.1. Legal and Factual Sufficiency

The October 1999 Deed was recorded. To rebut the resulting presumption of delivery, Jamileh had to prove that she had no intent to convey the Mosley Property according to the terms of the October 1999 Deed.

The evidence pertinent to the October 1999 Deed was not disputed. Jamileh testified that David presented her with only a blank signature page. The signature page does not contain any of the deed's formal provisions. David told Jamileh that by signing she was transferring the Mosley Property to him. Jamileh believed David's statement and signed the signature page of the October 1999 Deed. Jamileh did not sign in the presence of a notary. The deed was not recorded until January 4, 2000.[2] Later, Jamileh learned that the October 1999 Deed had actually conveyed the Mosley Property to Noorollah.

The trial court reasonably could have found from these facts that Jamileh's intent in signing the October 1999 Deed was to convey the Mosley Property to David and that the deed was recorded for a different purpose—to convey the property to Noorollah. As a result, the trial court could have found that the October 1999 Deed was not delivered. *See Black*, 835 S.W.2d at 630 n.10.

After reviewing all the evidence pertinent to the October 1999 Deed, we conclude the evidence is legally and factually sufficient to support the omitted finding that Jamileh lacked the requisite intent to convey the Mosley Property according to the terms of the October 1999 Deed. We overrule Noorollah's challenge to the trial court's findings of fact.

We turn now to Noorollah and Zarine's challenge to the trial court's

---

[2] Although Noorollah and Zarine argue that Jamileh is charged with knowing the contents of the document she signed, the record contains no evidence that the substantive portions of the deed had been drafted at the time Jamileh signed the signature page.

conclusions of law.

### 3.4.2. Conclusions of Law

### 3.4.2.1. Characterization of the Mosley Property

We begin with the conclusion of law characterizing the Mosley Property as Jamileh's separate property. The trial court found that David gave the Mosley Property to Jamileh. Because Noorollah and Zarine do not challenge this finding, we are bound by it. *See In re S.E.K.*, 294 S.W.3d at 930; *London*, 94 S.W.3d at 149.

Property acquired by gift is the recipient spouse's separate property. Tex. Const. art. 16 sec. 15. Jamileh acquired the Mosley Property by gift. Therefore, the Mosley Property is Jamileh's separate property.

Because the trial court's conclusion of law is supported by a controlling finding of fact, the trial court did not err when it characterized the Mosley Property as Jamileh's separate property.

### 3.4.2.2. Noorollah's Interest in the Mosley Property

We next address the conclusion of law that Noorollah and Zarine have no interest in the Mosley Property. This conclusion is consistent with the trial court's conclusion that Jamileh owns the Mosley Property as her separate property. It is also consistent with a conclusion that the October 1999 Deed is void.

We have upheld the trial court's omitted finding that the presumption of valid delivery was rebutted because Jamileh did not intend to convey the Mosley Property according to the terms of the October 1999 Deed. Therefore, the trial court's conclusions that Jamileh owns the Mosley Property and Noorollah and Zarine have no interest in the Mosley Property—and that the October 1999 Deed is void—is supported by a controlling finding of fact. The legal effect of the trial court's conclusion is to render the subsequent Mosley-Property deeds void. *See*

*Adams*, 154 S.W.3d at 870. The trial court did not err in concluding that Noorollah and Zarine have no interest in the Mosley Property.

We overrule Noorollah and Zarine's challenge to the trial court's conclusions of law.

## 4. CONCLUSION

Having overruled David's and Noorollah and Zarine's issues on appeal, we affirm the trial court's judgment.

/s/    Marc W. Brown
Justice

Panel consists of Justices McCally, Brown, and Wise.