In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-22-00354-CV
IN THE INTEREST OF N.A.W. AND E.D.W.

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 16-12-14117-CV**

## MEMORANDUM OPINION

This is an appeal from an Order in a Suit to Modify Parent-Child Relationship, which reduced the child support paid by N.A.W. and E.D.W.'s father (Father) under a Child Support Review Order. Mother appealed the trial court's modification order setting child support payments. In three issues, Mother argues that (1) the trial court erred in modifying Father's child support because Father failed to prove there had been a material and substantial change in the circumstances since the rendition of the prior order; (2) the trial court erred in calculating Father's gross monthly resources available for child support; and (3) the trial court erred in failing to find that Father was purposely underemployed. We affirm.

1

## Background

On December 7, 2016, the Office of the Attorney General (OAG) filed its Original Petition in Suit Affecting the Parent-Child Relationship. The OAG attached acknowledgments of paternity executed by Father to prove his parentage of the two children. The OAG requested that the trial court issue appropriate child support and conservatorship orders.

On January 24, 2017, the trial court issued its Order in Suit Affecting the Parent-Child Relationship. The trial court found that the net resources of Father were $2,948.04 per month and that the percentage applied to Father's net resources for child support is 19.17%. Applying the child support guidelines, the trial court found that Father owed $655.00 per month in current child support; however, the parties agreed to deviate from the guideline and reduce child support of $655.00 to $555.00.

Two years later, on March 25, 2019, the OAG filed its Petition for Confirmation of Non-Agreed Child Support Review Order. On May 28, 2019, the trial court signed a Child Support Review Order finding Father $684.86 in child support arrears. The trial court found Father's monthly net resources were $2,140.22 and ordered Father to pay $482.00 per month in current child support.

On October 21, 2020, Mother filed a Petition to Modify Parent-Child Relationship. In her petition, Mother requested that the trial court modify the January 24, 2017 order and the May 28, 2019 order. Mother alleged that the circumstances

of the child, a conservator, or other party affected by the order to be modified had materially and substantially changed since the date of rendition of the orders to be modified and that the requested modification was in the children's best interest. Following a hearing on March 22, 2021, the trial court signed a Final Order in Suit to Modify Parent-Child Relationship on April 8, 2021 (the "April 8, 2021 Order"), increasing Father's child support obligation to $1,435.72 per month.

On July 14, 2021, the OAG filed a Suit for Modification of Support Order and Motion to Confirm Support Arrearage alleging Father owes a total child support arrearage of $2,539.34 and that there has been a material and substantial change since the rendition of the April 8, 2021 Order. Mother filed her Original Answer on August 3, 2021, claiming there has not been a material and substantial change that warrants a modification of child support in this case because Father's child support was recently modified by the April 8, 2021 Order and Father purposely quit his job and underemployed himself to avoid paying child support. Father filed a general denial followed by a Cross-Petition to Modify Parent-Child Relationship requesting a retroactive decrease in Father's child support obligation, alleging there has been a material and substantial change since the date of the signing of the mediated settlement agreement on which the April 8, 2021 Order is based, and the child support payments previously ordered are not in "substantial compliance" with the Texas Family Code.

On July 18, 2022, the case was tried to the bench. The parties stipulated that at the time of the April 8, 2021 Order, Father's gross monthly income was $8,200 per month based on Father's 2020 tax returns. The parties also agreed that there were two children before the trial court and one not before the court.

Father and Mother testified at the hearing. Father explained his employment status changed because at the time of the April 8, 2021 Order he was employed with Magnum Electric but he is no longer employed there because the job he was working on for Magnum was coming to an end, because of COVID, other projects are not "kicking off." Father testified Magnum could no longer guarantee his hours would return back to normal and that he "was out of work, basically." According to Father, he did not know at the time of the March 2021 hearing that his employer would reduce his guaranteed hours to zero. Father testified this resulted in a financial hardship on his family of five, and he had to defer a mortgage payment and two car payments. He testified Magnum wanted him to "file unemployment and wait for the job to return to normal[,]" but he decided not to do so because he had "other options," which were to find a job or start his own company.

Father was out of work for two to three weeks when he decided to start his own business after the State issued him his electrical contractor's license. He currently has a license as a master electrician. At the time of the hearing, Father had been in business for approximately one year and three months and had one

4

employee. He admitted that the slowdown at Magnum and the possibility of starting his own business was discussed at the March 2021 hearing, but he added that his job at Magnum had not yet ended at that time.

Father testified his gross income from his business fluctuates each month. At the time of the hearing, his business was slowing down but he estimated he makes about $5,000 to $7,000 a month in gross income. He testified after he pays his expenses and one employee, he pays himself roughly about $800 a week before taxes. He asked the trial court to base his child support payments off his current income because he no longer makes the same amount of money he made when working for Magnum.

On cross-examination, Father admitted that the month prior to the hearing, Brightside "could have been about [averaging] – maybe 15,000 for the business." Father testified Brightside had two employees at the beginning of the year, but one quit about two or three months before the trial. He pays the current employee $17 an hour, with overtime, and the former employee was paid $25 an hour, with overtime. He also testified he has not tried to obtain employment that pays similar to what he earned at Magnum.

Father testified he formed his limited liability company, called Brightside Electric, LLC, around August 2019, but he did not start taking work until after the April 8, 2021 Order because he had to wait to obtain his contractor's license through

5

the State. At the time he formed the limited liability company, he was making over $100,000 with Magnum so he did not want to start working on his own at that time.

After leaving Magnum, Father advertised on Yelp and it took him about a month or two to get customers for Brightside. In the meantime, Father paid his bills with the little bit of money he saved from working at Magnum and with the help of his wife. According to Father, Brightside's work initially increased significantly, but more recently, business was slowing down.

Brightside has three Dodge Ram trucks which he purchased for $2,700, $5,500, and $9,000. The first truck was purchased with his own money, but the other trucks were purchased with money from the business. At the time of trial, his main business checking account had a balance of $4,000 and his other account had a balance of $62. Aside from payroll, Brightside's business expenses include tools, fuel, materials, insurance, and advertising. Father estimated he spends between $1,400 and $1,600 a month in fuel but agreed that his schedule of revenue and expenses shows a yearly fuel expense of $5,713.85. He testified he spends between $6,000 to $7,000 a month on materials and that he spends between $1,000 and $1,500 a year on insurance for his business and the vehicles.

When Father left Magnum, he did not have any return in his 401(k). He had some vacation that was cashed out as well as a couple of different paychecks for holiday pay, but Father didn't know how much vacation pay he cashed out. He has

6

not yet paid quarterly taxes for his business, as he is awaiting approval from the IRS to file taxes for his business as an S Corp. Since starting his business, he has not filed a business tax return.

Father testified he had several tools and other assets that are part of his business, but he could not testify as to their approximate value. He testified he used to employ and pay several contract laborers, but no longer has that expense because he does not have enough work for them. He also agreed Brightside no longer has the same expenses for advertising, meals and entertainment as when he first started the business and that his expenses for materials was less than before because work had slowed down.

Father admitted that even though his work has slowed down, he has not done anything to try and find another job. He also admitted that his intention was to continue working his business under Brightside, even if he was not making enough. After leaving Magnum, he did not find out how much his unemployment would be and does not know whether it would have been more than the approximately $3,400 a month he earns now. Father clarified he started paying himself $1,000 a week when he started his business but his CPA told him that if he paid himself more than $800 a week, his "business would probably fail depending on how much money is coming in." Father testified he is paid a weekly salary of $800, and he also takes a $200 weekly draw. His employee currently works thirty to forty-five hours a week and is

paid an average of $2,000 a month. The trial court admitted Father's February 23, 2022 financial information statement which shows Father's monthly gross earnings from his primary employment are $3,466.67.[1] Although he is capable of paying himself at least $1,000 a week, he reduced that amount based on the advice of his CPA for tax purposes.

Mother testified that she maintains the health and dental insurance for the children through her husband's employment with the U.S. military. She believes Father is underemployed because it "seems odd that since the last hearing, he automatically wants to start his own business. And he's still living the same lifestyle that he was living before." She believes Father's business slows down when the issue of child support modification is brought up.

On August 3, 2022, the trial court signed an Order in Suit for Modification of Support Order and to Confirm Support Arrearage. In the order, the trial court finds that there has been a material and substantial change in circumstances since the rendition of the April 8, 2021 Order and that Father's monthly net resources are $3,733.09. The order sets Father's child support at $839.95 each month.

After the order was signed, Mother requested findings of fact and conclusions of law. She also filed a motion for new trial, which asked for a new trial for the following reasons: (1) Father did not meet his burden to prove a material and

---

[1]This amount was based on the results from a self-employment calculator.

substantial change in the circumstances since the rendition of the April 8, 2021 Order to warrant any modification of his child support obligation, (2) the amount of child support ordered by the trial court is erroneous because the evidence showed Father was purposely underemployed, and (3) the trial court erred by not allowing Mother to develop testimony during the trial concerning the children's best interest as it relates to a reduction in child support.

After a hearing, the trial court denied Mother's motion for new trial. The trial court also issued findings of fact and conclusions of law in which it finds Father's current net resources are $3,733.09 per month, the percentage to be applied to net resources is 22.50%, and the current child support to be paid by Father based on Texas child support guidelines is reduced to $839.95 per month. The trial court's findings also include that there has been a material and substantial change in the circumstances since the rendition of the April 8, 2021 Order and modification of the child support order is in the best interest of the children. The trial court did not find that Father is purposely unemployed or underemployed.

## Standard of Review

Trial courts have broad discretion on a motion seeking to modify a previous child support order once a party seeking the modification establishes a material and substantial change in circumstances since the trial court rendered the prior order. *See* Tex. Fam. Code Ann. § 156.401(a) (permitting a trial court to modify a child support

9

order); *Royer v. Royer*, 98 S.W.3d 284, 285-86 (Tex. App.—Beaumont 2003, no pet.). We will not disturb a trial court's order of child support unless the complaining party shows a clear abuse of discretion. *See Iliff v. Iliff,* 339 S.W.3d 74, 78 (Tex. 2011); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

Under the abuse of discretion standard that we apply to child support orders, legal and factual insufficiency are not independent grounds of error, rather they are relevant factors in assessing whether the trial court abused its discretion. *See Farish v. Farish*, 921 S.W.2d 538, 542 (Tex. App.—Beaumont 1996, no writ); *see also In re J.A.J.*, 283 S.W.3d 495, 497 (Tex. App.—Beaumont 2009, no pet.) (citation omitted). A trial court does not abuse its discretion if the record contains some evidence of a substantive and probative character to support its decision. *Trumbull v. Trumbull*, 397 S.W.3d 317, 319-20 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Farish*, 921 S.W.2d at 541. In a case tried to the bench, the trial court acts as the factfinder, determines which witnesses are credible, decides what weight to give the testimony, and is free to resolve any inconsistencies in the testimony. *See Iliff*, 339 S.W.3d at 83 (citation omitted); *In re N.P.H.*, No. 09-15-00010-CV, 2016 WL 5234599, at *3 (Tex. App.—Beaumont Sept. 22, 2016, no pet.) (mem. op.) ("In a bench trial, the trial court acts as both the factfinder and the sole judge of the credibility of witnesses.").

10

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. The trial court's findings are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of evidence supporting a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We consider only the evidence most favorable to the judgment and will uphold the judgment on any legal theory that finds support in the evidence. *See Worford*, 801 S.W.2d at 109; *In re J.A.J.*, 283 S.W.3d at 497-98 (noting we view evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of the judgment).

## Analysis

We begin with Mother's first issue, in which she contends the trial court abused its discretion by finding there had been a material and substantial change in circumstances since the entry of the prior April 8, 2021 Order.

The trial court has discretion to modify the support order "only if the circumstances of the child or a person affected by the order have materially and substantially changed since … the date of the order's rendition[.]" Tex. Fam. Code Ann. § 156.401(a)(1). The movant on a motion to modify has the burden to show the requisite material and substantial change in circumstances since the rendition of the previous order. *Farish*, 921 S.W.2d at 541. "In determining whether there has been

11

a material and substantial change in circumstances, it is well settled that the trial court must compare the financial circumstances of the children and the affected parties at the time the existing support order was entered with their circumstances at the time the modification is sought." *Royer*, 98 S.W.3d at 285-86.

"In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines." *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The trial court's determination "is fact-specific and must be made according to the circumstances as they arise." *Id.* "[T]he law does not prescribe any particular method for a showing of changed circumstances, which may be established by circumstantial evidence." *Id.* at 429. "[A] change in circumstance may be so anticipated and factored into the original decree that the eventuality of the change does not constitute a material or substantial change of circumstances." *Wiese v. AlBakry*, No. 03-14-00799-CV, 2016 WL 3136874, at *4 (Tex. App.—Austin June 1, 2016, no pet.) (mem. op.); *see also Smith v. Karanja*, 546 S.W.3d 734, 740 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Mother argues Father did not prove a material and substantial change in circumstances because "[Father] knew at the time of the prior trial that work at Magnum Electric was slowing down and that he might lose hours or not have further projects to work on. The Court likewise knew all of this information when it entered

12

the April 8, 2021 Order finding that [Father] could reasonably continue to earn $8,200 per month just as he had in the past as a licensed electrician." The record demonstrates that at the time of the March 2021 hearing, Father was employed at Magnum Electric, and although he had formed his own limited liability company in 2019, he was not planning to start operating his own business yet because he was making over $100,000 per year. Father testified that at the time of the March 2021 hearing he understood his hours were going to be reduced when the project he was working on ended, but he did not know the extent to which they would be reduced. He explained that he was supposed to start another project when the project he was working on ended, but that project was held up due to COVID, after which Magnum could not guarantee him any hours. Father testified these circumstances caused a financial hardship resulting in his having to defer mortgage and car payments.

Although a reduction in hours may have been contemplated when the trial court found in the April 8, 2021 Order that Father's gross income was $8,200 per month, there is no indication the court contemplated the complete elimination of Father's guaranteed hours at Magnum, nor the ensuing financial hardship. Similarly, although the trial court may have anticipated Father would at some point start his own business, there is no indication it could have known what Father's income would actually be from such a venture.

13

The trial court heard the conflicting testimony about whether Father's circumstances materially and substantially changed after the April 8, 2021 Order and entered its findings after resolving these conflicts. The trial court was in the best position to resolve the conflicting evidence because it was able to observe the demeanor and personalities of the witnesses. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). We are charged with reviewing the evidence in the light most favorable to the trial court's judgment. In that light, we find that the evidence is legally sufficient to support the trial court's finding that there has been a material and substantial change in circumstances. *See id.* Because the record contains evidence to support the trial court's decision, we conclude the trial court did not abuse its discretion in finding a material and substantial change in circumstances. *Trumbull*, 397 S.W.3d at 319-20. We overrule Mother's first issue.

In her second issue, Mother complains that the trial court erred in calculating Father's gross monthly resources available for child support. We note that a trial court has broad discretion to set child support within the parameters established by the child support guidelines set forth in the Family Code. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993). Some of the factors a court may consider in assessing payments include the need of the child, the ability of the parents to contribute to the child's support, any financial resources available for support, and the amount of possession and access to the child. Tex. Fam. Code Ann. § 154.123(b).

14

We will not overturn a trial court's decision in this regard unless there is a clear abuse of discretion. *Rodriguez*, 860 S.W.2d at 415.

In calculating the net resources for purposes of child-support liability, the trial court may look to all wage and salary income, self-employment income, and other income being received. Tex. Fam. Code Ann. § 154.062(b). "Income from self-employment, whether positive or negative, includes benefits allocated to an individual from a business or undertaking in the form of a proprietorship, partnership, joint venture, close corporation, agency, or independent contractor, less ordinary and necessary expenses required to produce that income." *Id.* § 154.065(a). "In its discretion, the court may exclude from self-employment income amounts allowable under federal income tax law as depreciation, tax credits, or any other business expenses shown by the evidence to be inappropriate in making the determination of income available for the purpose of calculating child support." *Id.* § 154.065(b).

An obligor is required to furnish information sufficient to accurately identify his net resources and ability to pay child support. *Id.* § 154.063; *In re N.T.*, 335 S.W.3d 660, 666 (Tex. App.—El Paso 2011, no pet.). A trial court is not required to accept the obligor's evidence of income and net resources as true. *In re N.T.*, 335 S.W.3d at 666. The trial court may properly determine that the obligor has higher

net resources than alleged based on testimony by the obligee and other evidence in the record. *Id*.

Here, although the record shows Father did not file any tax returns, he did produce Brightside's bank statements, a personal financial information statement, and Brightside's financial statement which shows ordinary and necessary expenses required to produce business income. Father also provided a monthly child support calculation from the OAG's child support calculator based on a monthly gross income of $4,800. Although Father testified Brightside grosses $5,000 to $7,000 a month, the financial statement prepared by his accountant shows gross revenues of about $16,000 per month, along with total expenses of about $12,500 per month. Father testified Brightside's receipts slowed in the months leading up to trial, accompanied by a decrease in some of the expenses. In contrast, Mother testified she believes that Father is still living the same lifestyle he was living before and that his business slows down only when the issue of child support modification is brought up. Father testified he pays himself $1,000 per week including $800 salary and $200 draw, but he agreed the amount was based on his accountant's advice and does not necessarily reflect what he actually earns. The financial statement prepared by the accountant indicates Brightside has a net income, after all expenses, of about $3,500 per month. After considering the evidence in its entirety, we conclude the trial court

did not abuse its discretion in finding Father has net resources of $3,733.10 per month. We overrule Mother's second issue.

In Mother's third issue, she complains that the trial court erred in failing to find that Father was purposely underemployed. Section 154.066 of the Texas Family Code provides, in relevant part, that "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the potential obligor." Tex. Fam. Code Ann. § 154.066(a). "A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed." *Iliff*, 339 S.W.3d at 81. The court must, at the same time, consider a "parent's right to pursue his or her own happiness with a parent's duty to support and provide for his or her child." *Id.* at 82. (citations omitted). "The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings." *Id.* "Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed." *Id.* "In order to find a parent intentionally unemployed or underemployed, the evidence must show that the parent reduced his income for the purpose of decreasing his child support payments. The requisite intent may be inferred from such circumstances as the parent's education,

17

economic adversities, business reversals, business background, and earning potential." *In re K.N.C.*, 276 S.W.3d 624, 627 (Tex. App.—Dallas 2008, no pet.) (citation omitted); *see Iliff*, 339 S.W.3d at 82-83. We review a trial court's determination of purposeful underemployment under an abuse-of-discretion standard. *Iliff*, 339 S.W.3d at 81-82.

Here, although Father at one time earned $8,200 per month, he testified Magnum reduced his hours and encouraged him to file for unemployment and wait for work to return, at which time he decided to start his own business. Mother asserts on appeal that Father could have made more money from unemployment, but there is no evidence in the record to support this assertion. Father testified he did not file for unemployment because he began taking work for his new business within a month or two after leaving Magnum and receiving his contractor's license as a master electrician from the State.

Although Father admitted that he did not seek other employment when Brightside's work slowed down and that he intended to continue working through Brightside even if he was not making enough, the trial court was not required to find he was intentionally underemployed or unemployed. Brightside's gross revenues averaged as high as $23,000 per month during the first few months of 2021, and although business slowed down over the next few months according to Father's testimony, there is no evidence this downturn was due to Father's intentional

18

underemployment. The record reveals Father's previous employer, Magnum, also encountered a downturn during which work slowed to the extent Father was no longer guaranteed any hours and was encouraged to file for unemployment. The trial court could have interpreted Father's testimony about starting and continuing his own business as a commitment to pursuing what he considers best for himself and his family over the long term, despite temporary economic downturns. *See Iliff*, 339 S.W.3d at 82 ("the judge as fact finder has latitude to consider the testimony and evidence to make the necessary determinations").

After reviewing the evidence in its entirety, we conclude the trial court did not abuse its discretion in refusing to find Father was intentionally underemployed. We overrule Mother's third issue.

## Conclusion

Having overruled all of Mother's issues, we affirm the trial court's Order in a Suit to Modify Parent-Child Relationship.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on April 24, 2024
Opinion Delivered December 19, 2024

Before Golemon, C.J., Wright and Chambers, JJ.

19