

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00377-CV

_____

IN THE INTEREST OF S.C., R.C., AND L.C., CHILDREN

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 2006-10925-16

Before Walker, Kerr, and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

Appellant M.C. (Father) appeals the trial court's order modifying the amount of his child support obligation upward instead of downward. In two issues, he contends that the trial court abused its discretion by (1) finding that he is intentionally underemployed, considering that Appellee L.T. (Mother) had the burden to provide evidence and (2) departing from the child support guidelines and basing child support on his potential earnings instead of his actual income. Because we hold that the trial court did not abuse its discretion by finding that Father is intentionally underemployed or by applying the child support guidelines to his potential earnings instead of his actual income, we affirm the trial court's judgment.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Father and Mother divorced in January 2007. Their three children—S.C., R.C., and L.C., were then eight, six, and four years old, respectively.[1] In July 2015, Father, who remarried after the divorce, received net proceeds of approximately $100,000 from the sale of his separate-property residence, was earning $140,000 per year at his new job, and filed a petition to modify the parent-child relationship based on a mediated settlement agreement he and Mother entered into in January 2015. Father lost his job in December 2015, and Mother filed a counterpetition in January

---

[1]The children were all teenagers during the June 2016 modification trial at issue here and are now nineteen, eighteen, and fifteen, respectively. The agreed divorce decree provides that middle child R.C. has a disability and will not be capable of self-support.

2016. The parties then went back to mediation. By March 2016, they had reached a partial settlement agreement, leaving the amount of Father's child support (and other issues) to be determined by the trial court.

After more than four months of no employment, Father had another new job by mid-May 2016, and he wanted the trial court to reduce his monthly child support payments for the three children from $1,800 to $1,143 based on his new annual salary of $60,000. Conversely, Mother asserted that Father was intentionally underemployed, and she sought increased child support based on his earnings potential. After the June 2016 trial in which Father and Mother both testified, the trial court found that Father was intentionally underemployed in his field and ordered him to pay $2,267.54 per month in child support for the three children, with the monthly child support obligation to decrease to $1,889.62 when one child reached the age of eighteen or graduated from high school (whichever came later), married, enlisted, died, or had disabilities removed; and to $1,511.70 when a second child met one of those criteria.

In August 2017, more than a year after the trial, the trial court signed the final modification order, incorporating previously issued findings of fact. Father filed a timely motion for new trial, which the trial court denied, and Father then filed this appeal.

Father raises no issues in his brief regarding the trial court's denial of his motion for new trial.

3

# FINDINGS OF FACT

The trial court issued the following findings of fact:

2. [Father]'s net resources per month are deemed . . . to be $7,433.48;

3. [Father] began employment with iWThealth on or about May 15, 2016 earning a base salary of $60,000.00 per year. [He] is eligible for commissions through this employment, but, as of the date of the hearing, had not earned any commissions. [Father] testified that he is not actively seeking other employment.

4. [Father] was involuntarily terminated from his previous employment effective December 31, 2015 and received $7,000 in severance.

5. [Father] was subsequently unemployed in January, February, March, April, and half of May 2016.

6. [Father] received unemployment compensation of $958.00 biweekly for the months of March, April and first two weeks of May 2016.

7. Between December 2015 and May 2016, [Father] applied for numerous jobs. He received one offer of employment for 100% commission and he rejected that offer. During such time period, he also engaged in day trading.

8. In 2015, [Father] sold a residence that he owned prior to his marriage to his current spouse and received a net amount of approximately $100,000.00 from such sale.

9. [Father] owns a condominium in Florida that is valued at approximately $175,000.00 for [which he] states he receives no income.

10. [Father's] employment with Medhost started in April 2015 and ended December 31, 2015. His salary for that period was $140,000.00 per year, plus commissions. In 2015, [Father] earned approximately $80,000.00 from his employment with Medhost.

11. [Father]'s earnings for 2013 and the three previous years were approximately $150,000.00 in each year. In 2014, [he] earned over $140,000.00 in seven months of employment.

12. [Father] has worked in the health care sales industry since the date of the prior order.

13. [Father] has obtained a master's degree since the date of the prior order.

14. The Court finds that [Father's] actual income . . . is significantly less tha[n] what he could earn because of intentional underemployment. The Court finds that child support should be set based on [Father]'s earnings potential, which the Court finds to be $125,000.00 per year.

15. No evidence was admitted regarding [Mother's] net resources . . . .

16. The percentage applied to [Father]'s net resources for child support is thirty percent (30%).

17. The amount of child support ordered by the Court is [computed] by applying the percentage guidelines contained in 154.125(a) to the amount of $125,000.00 being deemed to be [Father]'s earnings potential.

18. The amount of child support that the Court ordered, based on gross resources of $125,000.00, to be paid by [Father], beginning June 1, 2016, is as follows:

   a. $2,230.04 per month for 3 children; and thereafter

   b. $1,858.37 per month for 2 children; and thereafter

   c. $1,486.70 per month for 1 child.[2]

19. The amount of child support that would be calculated if based on gross resources of $60,000 00 is as follows:

   a. $1,145.86 per month for 3 children; and thereafter

---

[2]We note that these amounts are less than those actually ordered: $2,267.54 per month for 3 children; $1889.62 per month for 2 children; and $1,511.70 for 1 child. Father does not address these discrepancies.

b.    $954.88 per month for 2 children; and thereafter

c.    $763.90 per month for 1 child[].

20.    The amount of child support that the Court ordered [Father] pay for January, February, March, and April of 2016 is $467.00 for each month.

## DISCUSSION

Father challenges the trial court's modification in two issues: first, he contends that the trial court abused its discretion by finding that he was intentionally underemployed because the burden of providing evidence of intentional underemployment shifted to Mother, who provided none; and second, he contends that the trial court abused its discretion by departing from child support guidelines and ordering child support based on his potential earnings instead of his actual earnings.

## I.    We Review the Trial Court's Decision for an Abuse of Discretion.

We review the trial court's modification of child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). In family law cases, whether the evidence supporting the trial court's decision is legally and factually sufficient is relevant in deciding whether the trial court abused its discretion, *In re P.S.*, 505 S.W.3d 106, 109 (Tex. App.—Fort Worth 2016, no pet.), but a trial court does not abuse its discretion by basing its decision on conflicting evidence as long as some evidence

6

supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding); *see In re E.P.C.*, 381 S.W.3d 670, 688 (Tex. App.—Fort Worth 2012, no pet.) (en banc) ("The evidence . . . is obviously conflicting, but we do not resolve the conflicts, for that is within the factfinder's province.").

## II. For a Trial Court to Modify Child Support, the Modification Must Be in the Child's Best Interest and the Child, Conservator, or Other Party Must Have Experienced Materially and Substantially Changed Circumstances.

Generally, as applicable here, a court with continuing, exclusive jurisdiction over matters involving a child may modify a child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed" and if the modification is in the child's best interest. Tex. Fam. Code Ann. §§ 156.001, 156.402 (West 2014), § 156.401(a) (West Supp. 2018); *Reagins v. Walker*, 524 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Iliff*, 339 S.W.3d at 81 ("[I]n child support decisions, the 'paramount guiding principle' of the trial court should always be the best interest of the child."). Both parents alleged a material and substantial change of circumstances in their pleadings. The children's best interests were at issue, with Father claiming his requested reduction[3] was in their

---

[3]Father's amended petition does not explicitly request a reduction in his current child support obligation; however, his motion to enter the agreed order and his summary of requested relief as to child support make clear that he wanted child support to be reduced based on the job he began in May 2016.

7

best interests and Mother claiming her requested increase in child support would serve the children's best interest.

## III. A Trial Court May Base Child Support on an Obligor's Earnings Potential If He Is Intentionally Underemployed.

If a child-support obligor's actual income "is significantly less" than his earnings potential "because of intentional unemployment or underemployment," section 154.066(a) of the Texas Family Code allows the trial court to apply child support guidelines to an obligor's earnings potential instead of his actual income when determining child support. Tex. Fam. Code Ann. § 154.066(a) (West 2014); *Iliff*, 339 S.W.3d at 81. As the Supreme Court of Texas has explained,

> The law has long recognized parents have a legal duty to support their children during their minority. A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed. Concurrently, the court must consider "a parent's right to pursue his or her own happiness" with a parent's duty to support and provide for his or her child. The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal.

> . . . . Although some financial resources are indispensable to raising and providing for a child, the financial analysis will often not be the end of the court's consideration. A court properly considers the obligor's proffered rebuttal evidence of the reasons for an obligor's intentional unemployment or underemployment. This includes such laudable intentions by obligors who alter their employment situations to spend more time with their children, to live closer to their children in order to attend their events and be more involved in their lives, or to provide their children with better health benefits. Other objectives are

8

also factors, such as whether an obligor alters his or her employment situation to start a new business, to gain further education, to become a public servant, or to address health needs. An active but unfruitful pursuit of employment may also be relevant to the court's child support determination, as well as economic conditions that legitimately preclude full employment. But, we are mindful that such explanations are not always sincere, and the judge as fact finder has latitude to consider the testimony and evidence to make the necessary determinations. Such discretion must be exercised within the limits set by the Texas Family Code, particularly Chapter 154 including the child support guidelines, and should always focus on the best interest of the child. To facilitate appellate review and to encourage consistency in the exercise of this discretion across the state, the trial court must make a finding of intentional unemployment or underemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record.

*Iliff*, 339 S.W.3d at 81–82 (citations and footnotes omitted). Although *Iliff* did not involve a modification and section 154.066 does not appear in the modification chapter of the Texas Family Code, the *Iliff* Court recognized that "the same intentional unemployment/underemployment analysis under section 154.066 may be applied in both original child support orders and modifications . . . ." *Id.* at 81 n.5; *see* Tex. Fam. Code Ann. § 156.402; *Reddick v. Reddick*, 450 S.W.3d 182, 187 (Tex. App.— Houston [1st Dist.] 2014, no pet.); *Coburn v. Moreland*, 433 S.W.3d 809, 832–33 & n.23 (Tex. App.—Austin 2014, no pet.).

## IV. The Trial Court's Finding that Father Is Intentionally Underemployed Is Supported by Factually Sufficient Evidence.

In his first issue, Father contends that the trial court abused its discretion by finding that he is intentionally underemployed when Mother failed to put on evidence

demonstrating his intentional underemployment. In essence, Father challenges the factual sufficiency of the evidence supporting the finding.

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Allison v. Conglomerate Gas II, L.P.*, No. 02-13-00205-CV, 2015 WL 5106448, at *6 (Tex. App.—Fort Worth Aug. 31, 2015, no pet.) (mem. op.). We defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

10

The factfinder is the sole judge of the credibility of the witnesses and is responsible for resolving conflicts in the evidence, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004); *Walker v. Walker*, No. 02-13-00229-CV, 2014 WL 2619147, at *1 (Tex. App.—Fort Worth June 12, 2014, pet. denied) (mem. op.).

Father correctly contends that his lower annual pay alone does not allow us to presume his intentional underemployment. After Father put on evidence that he earns $60,000 annually at his new job at iWT Health, which "deals in workflow, in [the] space that [he has] served in for most of [his] healthcare career," Mother had the burden to shown that Father's actual current earnings are "significantly less than his earnings potential," *Trumbull v. Trumbull*, 397 S.W.3d 317, 321 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (internal quotation marks omitted), and that he is intentionally underemployed. Tex. Fam. Code Ann. § 154.066; *Iliff*, 339 S.W.3d at 81–82. Mother satisfied her burden.

*First*, Mother elicited testimony through cross-examination of Father, the trial court admitted Mother's proffered exhibits, and Father answered the trial court's unobjected-to questions, all of which supported the trial court's unchallenged findings that Father earned:

- approximately $80,000 for about eight months of work in 2015;

- $140,000 for only seven or eight months of work in 2014;

11

- $150,000 in 2013; and

- $150,000, including commissions, during the prior three years when he worked for Quantros.

*Second*, as the trial court pointed out, there was no evidence of "any sort of industry downturn or that the industry [Father's] in is shutting down. He doesn't work in the oil and gas industry or anything of that nature." *Third*, Father testified on cross-examination that he received only one other offer, which was for an all-commission sales position requiring frequent travel, before taking his current job and that the current job is only "slightly different" than the jobs he held in the previous several years when he was earning more than double his current salary. *Fourth*, while Father testified that he "would absolutely consider" an offer paying substantially more money for a "dream job" if it came along, he admitted he was not currently looking for a different job.

*Fifth*, Father also admitted on cross-examination that the $100,000 he netted from the sale of his separate property home in 2015 ultimately went toward the new home he purchased with his current wife.

*Sixth*, while Father testified that child support computed under his current salary was in the children's best interest—a claim Mother disputed in her testimony—he also admitted that:

- the three children were teenagers;

- the then seventeen-year-old daughter was "involved in many activities";

12

- the then sixteen-year-old daughter is severely disabled, functions like an eighteen-month-old, and is "needy"; and

- with standard possession during the school year, Mother physically possesses the children the majority of the time.

We hold that Mother therefore satisfied her burden to prove that Father's current income is significantly less than his earnings potential and that he is intentionally underemployed. The trial court as factfinder could have inferred that Father's months-long job search before accepting his current position was not as intensive as it should have been, and no evidence indicated that Father's pursuit of his own happiness justifiably outweighed his duty to provide for his three teenagers, one of whom has special needs. *See Iliff*, 339 S.W.3d at 82. The evidence is sufficient to support the challenged finding; consequently, the trial court did not abuse its discretion by finding that Father is intentionally underemployed. We overrule Father's first issue.

## V. The Trial Court Correctly Applied the Child Support Guidelines to Father's Potential Earnings to Establish His Child Support Obligation.

In his second issue, Father contends that the trial court abused its discretion by establishing child support based on his potential earnings instead of his actual income and by not following the child support guidelines. Because we have upheld the trial court's finding that Father is intentionally underemployed, we hold that the trial court did not abuse its discretion by computing child support based on his potential earnings. *See* Tex. Fam. Code Ann. § 154.066(a); *Iliff*, 339 S.W.3d at 81.

13

Further, as the trial court found, it followed the child support guidelines, basing child support on Father's earnings potential of $125,000 a year:

> I base that on the fact that when I go back and average his annual incomes from the employment that I've been given evidence of, it is somewhere there in that neighborhood. And I think he has the capability of getting a job that would pay that amount. He's always done that in the past until recently. And so that is what I believe that he could do.

Taking Father's salaries for 2010 through 2015, he earned about $150,000 for the first four years, his partial-year earnings for 2014 reflected a yearly gross salary potential of about $210,000, and his partial-year earnings for 2015 reflected a yearly gross salary potential of $120,000. Adding those six amounts and dividing by six years yields an average annual income potential of $155,000, and that does not take into consideration the $100,000 net proceeds from the sale of his separate property home in 2015. Accordingly, we hold that the trial court did not abuse its discretion by applying the child support guidelines to Father's potential earnings of $125,000, and we overrule his second issue. *See* Tex. Fam. Code Ann. § 154.066(a); *Coburn*, 433 S.W.3d at 835.

## <u>CONCLUSION</u>

Having overruled Father's two issues, we affirm the trial court's judgment.

14

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered:  October 25, 2018